GREAT NORTHERN SAVINGS COMPANY, APPELLANT, *v.*
INGARRA ET AL., APPELLEES.

(No. 80-875—Decided June 24, 1981.)

*Mr. John D. May* and *Mr. James A. Hall,* for appellant.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. Robert W. Werth,* for Ohio League of Savings Associations.

*Buckingham, Doolittle & Burroughs Co.,* L.P.A., *Mr. Frederick M. Lombardi* and *Mr. John L. Reyes,* for appellees.

*Per Curiam.* In the past decade there have been numerous decisions regarding the enforceability of clauses such as the one contained in paragraph seven of appellees' second mortgage deed, known as "due on sale" clauses. Some jurisdictions have held that such clauses are enforceable only when the obligee can demonstrate a threat to one of its legitimate interests regarding the property or the obligation itself.

These jurisdictions have determined that "due on sale" clauses constitute significant restraints on alienation and that enforcement of such clauses cannot be justified by any positive effect such enforcement might have on the mortgage money market, particularly because such clauses fail to fully disclose the fact that they may be used to update a financial institution's mortgage portfolio and because such clauses are often the product of an inherently unequal bargaining process. See *Patton* v. *First Federal Sav. & Loan Assn.* (1978), 118 Ariz. 473, 578 P. 2d 152; *Tucker* v. *Pulaski Federal Sav. & Loan Assn.* (1972), 252 Ark. 849, 481 S.W. 2d 725; *Tucker* v. *Lassen Sav. & Loan Assn.* (1974), 12 Cal. 3d 629, 526 P. 2d 1169; *Wellenkamp* v. *Bank of America* (1978), 21 Cal. 3d 943, 582 P. 2d 970; *Sanders* v. *Hicks* (Miss. 1975), 317 So. 2d 61; *Continental Fed. Sav. & Loan Assn.* v. *Fetter* (Okla. 1977), 564 P. 2d 1013.

Other jurisdictions have held that such clauses are ordinarily enforceable, even if enforcement is not based on reasonable doubts regarding impairment of the security or return on the obligee's investment. In these jurisdictions the restraint is ordinarily viewed as relatively slight because sales utilizing conventional financing are not precluded.

These courts have determined that such a restraint is enforceable because it is freely bargained for, encourages the flow of mortgage money, and prevents borrowers from using any interest differential to make a profit. See *Tierce* v. *APS Co.* (Ala. 1980), 382 So. 2d 485; *Malouff* v. *Midland Federal Sav. & Loan Assn.* (1973), 181 Colo. 294, 509 P. 2d 1240; *Baker* v. *Loves Park Sav. & Loan Assn.* (1975), 61 Ill. 2d 119, 333 N.E. 2d 1; *Occidental Sav. & Loan Assn.* v. *Venco Partnership* (1980), 206 Neb. 469, 293 N.W. 2d 843; *First Commercial Title, Inc.* v. *Holmes* (1976), 92 Nev. 363, 550 P. 2d 1271; *Crockett* v. *First Federal Sav. & Loan Assn.* (1976), 289 N.C. 620, 224 S.E. 2d 580; *Gunther* v. *White* (Tenn. 1973), 489 S.W. 2d 529; *Walker Bank & Trust Co.* v. *Neilson* (1971), 26 Utah 2d 383, 490 P. 2d 328; *Mutual Federal Sav. & Loan Assn.* v. *Wisconsin Wire Works* (1976), 71 Wis. 2d 531, 239 N.W. 2d 20.

Even those jurisdictions holding that "due on sale" clauses are ordinarily enforceable have held that such enforcement is subject to equitable defenses such as estoppel and unconscionability. Inasmuch as we hold that appellant is estopped from enforcing the clause against appellees, we need not reach the issue of whether such clauses are enforceable when the obligee does not have a reasonable concern regarding impairment of its security or return on its investment.

In *In re Estate of Basmajian* (1944), 142 Ohio St. 483, this court at page 494, stated:

"An estoppel arises where one is concerned in or does an act which in equity and good conscience will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position."

GNS would be estopped from enforcing paragraph seven against appellees if its actions led appellees to make a sale in reliance on the representations inherent in appellant's actions, and if that reliance was reasonable under the circumstances.

Both appellant's vice-president and its loan officer were told by Nick Ingarra of his desire to sell the property by means of an installment land sales contract prior to entering into any agreement with the Gruiches. Neither of these officers made any effort to notify Ingarra of the possible ramifications of such a sale but, instead, encouraged his efforts—the vice-president by telling him that doctors might possibly be good buyers of such property and the loan officer by telling him that he would not have to pay closing costs on a third mortgage if he sold the premises.

Such behavior was particularly inequitable due to the relative positions of the parties and the nature of the clause itself. Although appellees were commercially developing the property, they certainly were not sophisticated business people. It was not unreasonable for appellees to believe that the clause would only be resorted to if the purchaser presented some sort of credit risk, not merely in order to increase the interest rate of the loan. Consequently, it was reasonable for appellees to believe that their sale of the property would in no way alter their arrangement with appellant and to proceed with the sale as a result of this belief.

In addition, after appellees agreed to sell the property, but before the closing, the loan officer indicated that the appellant had no objection to the sale. Although the Gruiches might have been able to specifically enforce the sales agreement, the threat of foreclosure, which would have forced them to find alternative and higher interest financing, might well have led to a mutual termination of the agreement.

Clearly by the time the bank notified appellees of its objections and of its use of paragraph seven, the Gruich deal was too far advanced for mutual rescission.

Under the facts of the case at bar, this court holds that appellant is estopped from enforcing paragraph seven of the second mortgage deed against the appellees.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., SWEENEY, HOLMES and C. BROWN, JJ., concur.

W. Brown, Rutherford and Moyer, JJ., dissent.

Rutherford, J., of the Fifth Appellate District, sitting for P. Brown, J.

Moyer, J., of the Tenth Appellate District, sitting for Locher, J.

Rutherford, J., dissenting. As set forth in the majority opinion, paragraph seven of the mortgage deed, executed and delivered by Nick and Myra Joyce Ingarra to Great Northern Savings Company (GNS), to secure loan No. M18041 of $230,000 at 8¼ percent interest per annum, on the Ingarras' property, which mortgage deed, as recorded in Summit County Records No. 621503, Vol. 5210, pages 552-555, on October 18, 1971, reads:

" ' He [Grantor] will not sell, transfer or dispose of all or any part of the above described premises without first obtaining the written consent of the Grantee [GNS]. If there shall be any change in the ownership of the premises covered hereby, or any part thereof, without the written consent of the Grantee, the entire principal indebtedness secured hereby, and all accrued interest thereon shall become due and payable at the election of the Grantee, the foreclosure preoceedings may be instituted hereon, or the Grantee may elect to increase the interest rate on the outstanding principal indebtedness secured hereby to a rate not to exceed 2% per annum above the rate stated in the note secured hereby and Grantor hereby waives notice of such interest rate increase and consents to the same."

Thereafter, on November 4, 1977, the Ingarras, sellers, and Stevan and Martha Gruich entered into an agreement whereby the Ingarras agreed to convey the property to the Gruiches for $525,000, with $60,000 down and the rest to be financed by a mortgage loan with the Ingarras; interest to be at eight percent. On November 23, 1977, the parties closed the transaction, Gruich and his wife obtaining a deed by paying the Ingarras the remainder of the downpayment and giving the Ingarras a mortgage on the property with interest at eight percent per annum. As between the Ingarras, as sellers, and the Guriches, as purchasers, there was a valid transfer

resulting in *change of ownership,* at this point. The deed was not recorded and, on January 24, 1978, the Ingarras and Gruiches changed the conveyance to a land contract. The Great Northern Savings Company took no action to foreclose and the Ingarras refused to pay the additional two percent interest.

On December 13, 1978, Great Northern Savings Company commenced the instant action in common pleas court, seeking a declaratory judgment declaring the bank's contractual rights.

On August 28, 1979, a judgment entry was filed in said case in the Summit County common pleas court, case No. CV 78 12 2875, which, in pertinent part, with respect to the "due on sale" provision, reads:

"3. That upon stipulation of plaintiff [GNS] counsel in this matter plaintiff shall not foreclose against the equity of redemption of the defendants' [*sic*] in the real property secured by the above described mortgage deed [being the same mortgage deed as described herein, *supra*] as a result of defendants' conveyance."

The foregoing judgment entry, with respect to increase of the interest rate following sale, in another pertinent part, reads:

"4. That the plaintiff has a good and valid optional contract right to accelerate the interest rate on loan number M 18041 at a rate not to exceed two per centum per annum, effective July 1, 1978, and as provided by paragraph seven of the above referenced mortgage deed."

Great Northern Savings Company, plaintiff, filed no notice of appeal from said judgment entry of August 28, 1979, *supra;* the only notice of appeal therefrom being the one filed by Nick and Myra Joyce Ingarra on September 25, 1979.

No notice of appeal having been filed by plaintiff, Great Northern Savings Company, the declaration of the common pleas court made upon stipulation of plaintiff in paragraph No. 3 of the judgment entry, *supra,* became *res judicata,* as to the issue of foreclosure as a result of sale, by declaring, "[t]hat upon stipulation of plaintiff [GNS] counsel in this matter plaintiff shall not foreclose against the equity of redemption of the defendants' [*sic*] in the real property secured by the* * *mortgage

deed [No. 621503, Vol. 5210, pages 552-555, Summit County Records] as a result of defendants' conveyance."

For the reasons set forth, the justiciable issue of plaintiff's right of foreclosure having been terminated by the declaration of the common pleas court contained in paragraph No. 3, *supra,* of the judgment entry, no reason remains for an advisory declaration upon the facts of this case; the issue having become moot.*

On the other hand, that part of the judgment decreeing plaintiff to have a good and valid optional contract right to accelerate the interest rate not to exceed two percent per annum, effective July 1, 1978, which was favorable to the plaintiff and appealed from by the defendants, Nick and Myra Joyce Ingarra, remained as an issue on defendants' appeal, and plaintiff's request for a declaratory judgment—"Declaring the contract right of the plaintiff to accelerate the interest rate 2% per annum, in lieu of foreclosure proceedings, to be a valid, lawful and optional contractual remedy of the plaintiff;"—thus continued as an issue on appeal.

The Court of Appeals reversed that part of the judgment of the common pleas court decreeing plaintiff to have a good and valid optional contract right to accelerate the interest rate not to exceed two percent per annum, effective July 1, 1978, holding that it would constitute an unlawful restraint on alienation.

Paragraph seven of the recorded mortgage deed, executed and delivered by Nick and Myra Ingarra to Great Northern Savings Company, contains express provisions giving Great Northern Savings the right upon sale of the property by the Ingarras to elect to increase the interest rate on the outstanding principal indebtedness, secured by the mortgage to a rate not to exceed two percent per annum above the rate stated in

---

* Respecting appeals in declaratory judgment actions, R. C. 2721.08, provides: "All orders, judgments, and decrees under sections 2721.01 to 2721.15, inclusive, of the Revised Code, may be reviewed as other orders, judgments, and decrees are reviewed."

In *Dyar* v. *Bingham* (1955), 100 Ohio App. 304, 306 the Court of Appeals concluded that "this court has no jurisdiction to entertain an original action filed in this court for a declaratory judgment."

In *Schick* v. *Cincinnati,* (1927), 116 Ohio St. 16, paragraph three of the syllabus reads: "This court does not render declaratory judgments.***"

the note secured by the mortgage, and includes a provision of waiver of notice by the Ingarras of such two percent increase in the interest rate and of their consent of the same. The provision is sufficiently clear to leave no ambiguity and nothing *contra* can be implied from the provisions of the agreement.

Such an agreement can be altered only by a bilateral agreement of the parties or by a waiver of a provision thereof by the party in whose favor the provision waived operates, such as occurred in this case when Great Northern Savings stipulated the waiver of its right to foreclose, which right of GNS was then declared forfeited in the judgment entry of the common pleas court. But, Great Northern Savings Company did not stipulate to any waiver of its right to elect to increase the interest rate on the outstanding principal indebtedness, secured by the mortgage not to exceed two percent per annum above the rate stated in the note secured, which right of GNS could not be altered by any unilateral action of the Ingarras. The *matter of sale* had been discussed without any indication that foreclosure would follow if sale were made. The *matter of increase of interest in event of sale* was never inquired into by the Ingarras, nor was any statement ever made by GNS from which the Ingarras could conclude that the right of GNS to elect to increase interest by two percent was being waived as distinguished from the waiver of foreclosure.

In *Gugle* v. *Loeser* (1944), 143 Ohio St. 362, paragraph one of the syllabus reads:

"Agreements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests."

The liberty to contract is a foundation of doing business. Such liberty ought not to be emasculated by the courts by enabling competent parties to escape their contractual obligations on the pretext of public policy unless the preservation of public welfare imperatively so demands.

Conduct of a mortgagee sufficiently unconscionable and inequitable as to effect a direct or indirect restraint on alienation might, if sufficient, render provision for increased interest on sale contained in a mortgage against public policy, such as to

entitle the mortgagor to relief. Such unconscionable or inequitable conduct or direct or indirect restraint on alienation does not, however, appear from the provision for a two percent increase in interest in this case.

The provision is not a direct restraint on alienation. The mortgagor will have to pay an increase of two percent interest on sale, but he has not been prevented from making a sale. Neither does it appear that he has been indirectly restrained from making a sale. There is no reason why the mortgagee should be restrained from contracting against the mortgagor acquiring a windfall by sale when, with the increase of two percent, the buyer will benefit by paying less interest than those who secure loans in the open money market will be required to pay. Neither is the contract provision for a two percent increase in interest so unconscionable and inequitable as to be against public policy or afford equitable relief to the mortgagor. Under the provisions of the open end mortgage, if interest rates should go down, the mortgagor can refinance; if they go up, the lender has to pay an increased rate to obtain money to be loaned against, and he should be entitled to the protection agreed to by borrowers, under the liberty of borrowers and lenders to so contract or not to so contract.

If the time comes when provisions of contracts voluntarily entered into between competent parties, which have not been modified by bilateral agreement of the parties and which are neither fraudulent nor unconscionable, are ordered unenforcable by the courts, the liberty to contract and the ability to do business will be unreasonably restrained.

For the reasons set forth, the judgment of the Court of Appeals ought to be reversed and the judgment of the common pleas court ought to be affirmed.

W. BROWN and MOYER, JJ., concur in the foregoing dissenting opinion.