FIRST INVESTMENT COMPANY,
Plaintiff,

v.

Robert CUSTER, Margie Ann Custer,
George W. Ledford, Trustee,
Defendants.

In the Matter of Robert CUSTER,
Margie Ann Custer, Debtors.

The KISSELL COMPANY, Servicer for
State Teachers Retirement Board of
Ohio, Plaintiff,

v.

Kenneth M. DAVIS, Judy C. Davis,
George W. Ledford, Trustee,
Defendants.

In the Matter of Kenneth M. DAVIS,
Judy C. Davis, Debtors.

FEDERAL NATIONAL MORTGAGE
CORPORATION, Plaintiff,

v.

Mary J. WARD, George W. Ledford,
Trustee, Defendants.

In the Matter of Mary J. WARD,
Debtor.

The LEADER MORTGAGE
COMPANY, Plaintiff,

v.

Ronald L. ORR, Vanessa C. Orr, George
W. Ledford, Trustee, Defendants.

In the Matter of Ronald L. ORR,
Vanessa C. Orr, Debtors.

Bankruptcy Nos. 3–81–02350, 3–81–02490,
3–81–02591 and 3–81–02754.
Adv. Nos. 3–81–0639, 3–81–0661,
3–81–0662 and 3–81–0803.

United States Bankruptcy Court,
S. D. Ohio, W. D.

March 15, 1982.

Jeffrey V. Laurito, Dayton, Ohio, for plaintiffs Leader Mortg. Co., First Inv. Co. and First Nat. Mortg. Co.

Douglas B. Gregg, Dayton, Ohio, for plaintiff First Inv. Co.

Donald F. Harker, III, Dayton, Ohio, for defendants Robert and Margie Custer.

David E. Larson, Dayton, Ohio, for defendants Kenneth M. and Judy C. Davis.

Charles D. Ross, Dayton, Ohio, for plaintiff Kissell Co.

George Ledford, trustee.

Christopher M. Hawk, Dayton, Ohio, for defendant Mary Ward.

Clifton Plattenburg, Dayton, Ohio, for defendants Ronald and Vanessa Orr.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

## FINDINGS OF FACT

The above-captioned cases have been combined for purposes of decision. In all four cases at bar, the Plaintiffs are holders of mortgages on real property constituting the respective Debtors' principal residences. The parties do not dispute either the validi-

ty of the notes or mortgages underlying the parties' transactions, the proper perfection of the mortgages, or the fact of pre-Petition default on the mortgages. In addition, none of the Plaintiffs have presented any evidence to refute the value of the home as alleged in the Debtors' Schedules.

The Court also finds that the subject promissory notes all use identical language to trigger the mortgagees' right of acceleration, as follows:

> If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The central issue in all four cases is whether the defaults prior to the Chapter 13 petitions are curable through an 11 U.S.C. Chapter 13 Plan pursuant to the broad provisions of 11 U.S.C. § 1322.

For purposes of ready comparison, the basic facts of each case are capsuled, as follows:

*First Investment Company v. Custer* :

- —date of bankruptcy Petition filing: August 19, 1981
- —amount of claim as listed in Debtors' Schedules: $17,526.00 with monthly payments of $205.00, seven payments in arrears
- —claim as listed in Plaintiff's Proof of Claim: present balance due $18,472.75, consisting of $17,525.74 of principal and $947.01 of interest
- —date of note and mortgage: October 28, 1977
- —original principal and interest rate: $18,000 at 8.5%

- —amount of principal in arrearage at the time of Petition filing assuming debt not accelerated: $1,435.00 (seven installments in arrears)
- —date of initial uncured default: February 1, 1981
- —date and circumstances of alleged acceleration: June 19, 1981, by filing of Petition for foreclosure in state court
- —date and amount of state court judgment: no evidence submitted, presumably none
- —value of home as listed in Debtors' Schedules: $23,500.00
- —pertinent terms of Chapter 13 Plan: "[Plaintiff] shall be paid [$1,435.00] . . . to cure Debtor's [*sic*] default. Mortgage payments accruing after date of filing of the Petition are to be paid outside the plan."
- —additional matters raised: In the alternative, Plaintiff requests relief from the automatic stay as permitted in 11 U.S.C. § 362(d)(1). Plaintiff also prays for costs.

*The Kissell Company v. Davis* :

- —date of bankruptcy Petition filing: September 30, 1981
- —amount of claim as listed in Debtors' Schedules: [1] $21,000.00, with monthly payments of $255.00, ten installments in arrears
- —claim as listed in Plaintiff's Proof of Claim: present balance due $26,602.65, consisting of $22,168.88 of principal and $4,433.77 of interest.
- —date of mortgage and note; August 16, 1979
- —original principal and interest rate: $22,300.00 at 10%
- —amount of principal in arrearage at the time of Petition filing assuming debt not accelerated: $2,550.00 (ten installments in arrears)

---

1. The creditor which is listed is the State Teacher's Retirement Board (Kissell Co.) is "marked out" and the State Teacher's Retirement Association is typed over it. There is no mention of an assignment, but Kissell Co. is not listed in the schedules, and this is the only listed debt which corresponds to the pleading in the adversary proceedings. Apparently, Kissell is a servicing agent.

—date of initial unsecured default: October 1, 1981 [2]

—date and circumstances of alleged acceleration: May 19, 1981, by filing a foreclosure action in state court

—date and amount of state court judgment: no evidence submitted, presumably none

—value of home as listed in Debtors' Schedules: $28,000.00

—pertinent terms of Debtors' Chapter 13 Plan: "Secured claims are to be paid prior to unsecured."

—additional matters raised: Plaintiff also alleged that Debtors owe Plaintiff for "any advancements made by Plaintiff for the protection of the property, taxes insurance, and fees and costs of this action." The Court notes, however, that Plaintiff has not submitted substantiation of advancements, and limits its prayer to a request that the Court deny Plan confirmation and dismiss Debtors' Petition.

In response, Debtors have filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. Debtors also pray for costs and attorney fees.

*Leader Mortgage Company v. Orr*:

—date of bankruptcy Petition filing: August 19, 1981

—amount of claim as listed in Debtors' Schedules: $20,000.00, with monthly payments of $175.00

—claim as listed in Plaintiff's Proof of Claim: present balance due $18,112.40, consisting of $16,088.34 of principal and $2,024.07 of interest

—date of mortgage and note: October 25, 1978 (Plaintiff is assignee and holder of the mortgage)

—date of mortgage and note: October 25, 1978 (Plaintiff is assignee and holder of the mortgage)

—original principal and interest rate: $16,450.00 at 9.5%

—amount of principal in arrearage at the time of Petition filing assuming debt not accelerated: $2,100.00 (12 installments in arrears)

—date of initial uncured default: October 1, 1980

—date and circumstances of alleged acceleration: July 21, 1981, by filing a Petition for Foreclosure in state court

—date and amount of state court judgment: no evidence submitted, presumably none

—value of home as listed in Debtors' Schedules: $20,000.00

—pertinent terms of Debtors' Chapter 13 Plan: "[Plaintiff] shall be paid on a pro rate basis [with all secured creditors] first. The balance shall be divided between the unsecured creditors on a pro rate basis."

—additional matters raised: In the alternative, Plaintiff requests relief from the automatic stay as permitted in 11 U.S.C. § 362(d). Plaintiff also prays for costs.

*Federal National Mortgage Association v. Ward*:

—date of bankruptcy Petition filing: September 30, 1981

—amount of claim as listed in Debtors' Schedules: $15,334.00, with monthly payments of $259.00, twelve installments in arrears

—claim as listed in Plaintiff's Proof of Claim: present balance due $17,858.85, consisting of $15,334.81 principal and $1,262.02 interest

—date of mortgage and note: November 28, 1969

—original principal and interest rate: $18,000.00 at 7.5%

—amount of principal in arrearage at the time of Petition filing assuming debt not accelerated: $3,108.00 (twelve installments in arrears)

—date of initial uncured default: October 1, 1980

**2.** As the file stands, this is incorrect. To date Debtor has only filed an answer which denied default. It is assumed Debtor will concede the fact of default.

—date and circumstances of alleged acceleration: July 28, 1981, by filing a Petition for Foreclosure in state court

—date and amount of state court judgment:[3] July 29, 1981, "for Plaintiff"

—value of home as listed in Debtor's Schedules: $20,000.00

—pertinent terms of Debtor's Chapter 13 Plan: "Secured creditors whose claims are duly proven and allowed shall be paid 100% of the value of their collateral and shall retain their liens"

—additional matters raised: In the alternative, Plaintiff requests relief from automatic stay as permitted in 11 U.S.C. § 362(d). Plaintiff also prays for costs.

## CONCLUSIONS OF LAW

All of the instant cases raise substantially the same issue and they have been combined for the purposes of disposition by the suggestion and consent of the interested parties.

The question presented for decision is whether Section 1322(b)(5) of the Bankruptcy Reform Act of 1978 (hereinafter "Bankruptcy Code") applies when a secured debt has been accelerated prior to the filing of the petition under Chapter 13 of the Bankruptcy Code. If § 1322(b)(5) is interpreted to preclude application in such cases, the question then presents itself as to whether § 1322(b)(3) applies.[4]

If neither of these sections applies practically every Chapter 13 debtor will be barred or be unable to cure defaults on their mortgages on the homestead, a primary necessity for the rehabilitation of such debtors, even though debtors might tender the entire balance within a reasonable time and even though a debtor may otherwise be capable of financial rehabilitation.

This question has been litigated in several courts and the conclusions reached after well reasoned decisions are not uniform. It is not our purpose here to distinguish or criticize these decisions which have been amply supported by authorities deemed applicable. An examination of all of these cases, to which reference will be made hereafter, does reveal, however, that several important facets have not been discussed. The cited cases analyze the statutory sections in great detail, relying in different measure upon statutory history, in the perspective of the rights of respective real estate mortgagees only, despite the rehabilitation purposes so clear in the enactment of the Chapter 13 individual debt adjustment process, truisms which need not now be labored extensively.

This Court does not feel comfortable in opting out of the dilemma by merely adopting the analysis so convenient from *In re Soderlund*, 18 B.R. 12 (Bkrtcy.E.D.Ohio 1981).

### I

Hence, several other aspects and consequences of the legal issues involved must be addressed. The issues presented will be considered in the framework of not only the rights and protection of the mortgagee and the purpose of the financial rehabilitation of debtors seeking relief from burdensome debts; but, also, within the perspectives of protection to the other parties involved in the case and the protection of established values in property of the estate to be applied for the benefit of all of the interested parties.

The concepts of providing adequate protection to secured creditors, in general, and

---

**3.** The evidence does not include a copy of the state court judgment, and Plaintiff does not mention it. Also, the judgment is not included in the Schedules. The only mention of it is in Debtor's brief.

**4.** The full text of the relevant 11 U.S.C. § 1322 reads, as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may...

(3) provide for the curing or waiving of any default....

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the Plan is due....

the function of the Court to pattern decrees accordingly when applicable under 11 U.S.C. §§ 362–364, comports with the traditional equitable jurisdiction of the bankruptcy courts. 28 U.S.C. § 1481 vesting "powers of a court of equity," as in Section 2(a) of the Bankruptcy Act, mandates that the court look through the form to the substance of any particular controversy or dispute to contrive new remedies when remedies at law are inadequate to preserve and protect property of the estate and all parties involved. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Securities & Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). The traditional equitable powers granted by 28 U.S.C. § 1471 also comport with those granted by 28 U.S.C. § 1651 (all Writs Statute) and by 11 U.S.C. § 105. See House Report statements, H.R.Rep.No.595, 95th Cong., 1st Sess. 448 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

## II

The initial inquiry in such cases should first be directed to the question of whether or not a mortgagee is adequately protected by the mortgage securing the debt accelerated. If the value of the collateral does, in fact, adequately protect the security of the mortgagee, then attention must be directed to the plan of debtor as proposed to ascertain whether or not it was filed in good faith and can feasibly be consummated if confirmed by the Court. If a plan can be confirmed, the other interests involved, particularly the interest of all of the other creditors looking to the debtor and the estate for satisfaction of their claims, can be protected. In other words, is it in the best interests of other creditors to protect the debtor's equity in the property so that payments may be made to these creditors, whose claims would not be satisfied upon a judicial foreclosure or forced liquidation of the real estate collateral involved?

It is not necessary to make an exhaustive analysis of the Ohio law of mortgages. Suffice to recite that, "A mortgage of real estate is security for an obligation to which it is collateral, and, therefore, the obligation secured is the primary obligation and the mortgage is merely incidental thereto." 37 O.Jur.2d, *Mortgages*, § 3, pp. 207–208.

It is important to further observe that a forced sale in the pending state court foreclosure proceedings would not only avoid any possibility for the debtor to obtain financial rehabilitation; but also, the proper value of the real estate sold from the estate would be critically depleted. The Ohio Statutes and the traditional remedy in foreclosure sales permits the sale of such collateral by public auction conducted by an officer of the Court (the sheriff) at not less than two-thirds of its appraised value. When such sales are conducted and the two-thirds value realized, obviously one-third of the value is forfeited for the purpose of enabling the first mortgagee only to liquidate its debt. Ohio Revised Code § 2329.20 (G.C. § 11675).

From the facts in all of the instant cases, it is obvious that practically every lien document as to both realty and personalty not only contains an acceleration clause; but, the form in common usage is stereotyped. If pre-Chapter 13 acceleration precludes the use of statutory rights in order to cure default, the Chapter 13 process has been rendered no longer available in the vast majority of cases. The voluminous litigation now pending in this Court on the subject, in addition to the numerous reported cases on the subject, demonstrates that the attempt to save homesteads is one of the primary purposes and ends of Chapter 13 rehabilitation. The other decisions examined do not consider the rights of other creditors to payments from the estate, even though the Plan may be feasible, and in face of the realization as a practical matter that one-third of the property value would be forfeited to pay a mortgagee already adequately protected.

### III

In this regard the automatic stay enacted in 11 U.S.C. § 362 must be considered and enforced as a continuum. The intent of the Congress in preserving the *status quo* in all cases must be read into the design and operation of Chapter 13, in having creditors paid in deference to the losses suffered through a Chapter 7 liquidation and a discharge in bankruptcy. The automatic stay, therefore, must be rationalized from the basic premise of the preservation of economic values. Expressed differently, the protection of all interested parties must be preserved by the judicial process, including the avoidance of the precipitous invasion and economic waste involved when only one creditor seeks a preference in payment to the detriment of the estate by a forced sale of assets.

Hence, we are constrained to concur with those decisions which provide that the acceleration of the debt is merely part and parcel of the default that gave rise to the foreclosure suit in the state court. Section 1322(b)(5) is intended to permit a debtor to cure any default, including a precipitated acceleration therefrom. It does not seem logical to conclude that the consequence of curing a default does not effect a reinstatement of the mortgage contract and the debt, since the mortgage is only security for the debt. See *In re Acevedo*, 9 B.R. 852, 4 C.B.C.2d 178, B.L.D. ¶ 67967 (Bkrtcy.E.D.N.Y.1981); *In re Sapp*, 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981); *In re Rippe*, 14 B.R. 367 (Bkrtcy.S.D.Fla.1981); *In re Taddeo*, 9 B.R. 299, 7 B.C.D. 422, 4 C.B.C.2d 185, BLD ¶ 68093 (Bkrtcy.E.D.N.Y.1981); and *In re Davis*, 16 B.R. 473 (D.Kan.1981). A reputable treatise on bankruptcy law draws a similar conclusion. See 5 *Collier on Bankruptcy* § 1322.01(3), (E) (15th Ed. 1981) which concludes, as follows:

> "The debtor may maintain the contract payments during the course of the Plan *without acceleration* by virtue of any pre-Petition default, by proposing to cure the default within a reasonable time. The debtor may avail himself of the provisions of § 1322(b)(5) even though the long term debt is secured only by a security interest in real property which is the principle residence of the debtor." [emphasis added].

Other decisions interpreting § 1322(b)(5) implicitly support the same conclusion but do not reach the same result, on the rationale that the foreclosure proceedings had progressed to the point of being in judgment, treating the judgment rather than the debt secured by a mortgage itself as the basis for the creditors claim. It was concluded in those cases that the last payment on the obligation would be due after the final payment under the Plan is due. See *In re Robertson*, 4 B.R. 213, 6 B.C.D. 375, 2 C.B.C.2d 136 (Bkrtcy.D.Colo.1980); *In re Canady*, 9 B.R. 428, 7 B.C.D. 749, BLD ¶ 67906, 4 C.B.C.2d 113 (Bkrtcy.Conn.1981); *In re Land*, 14 B.R. 132, 8 B.C.D. 90, 5 C.B.C.2d 145 (Bkrtcy.N.D.Ohio 1981); *In re Pearson*, 10 B.R. 189, 7 B.C.D. 567, BLD ¶ 67942, 4 C.B.D.2d 57 (Bkrtcy.E.D.N.Y. 1981); *In re Jenkins*, 14 B.R. 748, 8 B.C.D. 292, 3 BLD. ¶ 68394 (Bkrtcy.N.D.Ill.1981); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn. 1981). These decisions leave the clear impression that if the mortgage obligations had not been reduced to judgment before the Chapter 13 case filings that those courts would have permitted curing of the mortgage default despite the fact that the mortgage obligation had been accelerated by adhesion clauses therein.

A reading of §§ 1322(b)(5) and 1328(a)(1) of the Bankruptcy Code indicates that the intent of the Congress from the phrase "curing of any default," as used in § 1322(b)(5), means placing the parties in the position they would have been if no default had occurred. The term "the last payment" cannot refer to the time when payment is due *after acceleration*, because acceleration is merely one contractual consequence of default and cannot eliminate or negate the other terms contained in the basic promissory note obligation secured by a real estate mortgage. See *In re Sapp, supra; In re Rippe, supra.* To interpret these phrases to mean "when payment is due by reason of default" negates meaningful relief to any Chapter 13 debtor in de-

fault on his homestead mortgage despite the usage of stereotyped acceleration clauses by adhesion. The entry of a judgment does not alter or affect the existence of adequate protection from the mortgage collateral.

In addition to the provisions of 11 U.S.C. § 1322(b)(2) and (5) it is important to observe the provisions of § 1322(b)(3), which provides "for the curing or waving of *any default.*" [emphasis added]. All of these sections, read *in pari materia*, reveal the clear scope and intent of the relief for both debtors and the protection to creditors.

The well reasoned decision *In re Soderlund, supra,* has been cited as pᵣimary authority by all of the Plaintiff-Mortgagees *sub judice.* The decision in *Soderlund* presents a very logical interpretation of 11 U.S.C. § 1322(b). It does not consider, however, the context of equitable factors and other relevant Bankruptcy Code provisions. 11 U.S.C. § 1303 gives a debtor the powers of the trustee as granted by 11 U.S.C. § 363(b), which thereby allows the Trustee (and debtor) to "use, sell, or lease, other than in the ordinary course of business, property of the estate." The conclusion follows that there is no restriction in either § 1303 or § 363 placed upon this right to use property, including a claimed contract acceleration clause on foreclosure of mortgages.

With a different perspective we conclude that feasible plans filed in good faith demonstrating the best interests of the other creditors should be administered for payments to such creditors and the Trustee should be authorized to accumulate funds for the purpose of permitting the debtors to effect both a financial rehabilitation and the avoidance of the forfeiture of the homestead exemption of the debtor and the loss of equity in the property which would be forfeited by the forced two-thirds sale rule implicit in state court foreclosures.

IV

Approaching the need to pattern a decree to protect all interested parties (including the secured creditor), and particularly the unsecured creditors who have no voice or protection other than the court's decree, full faith and credit is extended to the jurisdiction of the state court. The monetary amount of the state court judgment is not involved or in question and constitutes *res judicata.*

The state court judgments fix the amounts due and owing, including interest and costs. The mortgagees would have the option of collecting either the contract debt service charges in the obligation as secured or the state court awards in the judgments.

After judgment, the state court jurisdiction contemplates an order of sale and disposition at not less than two-thirds of the appraised value, or exercise of the equity of redemption by the property owners (Debtors herein). The purpose of the right of redemption corresponds, in principle, to the purpose of enabling the debtors in Chapter 13 to protect their equity in the property in excess of the mortgage security. Hence, curing the default through the paramount rights exacted pursuant to Article I, Section 8 of the United States Constitution in protecting the estates of debtors for their rehabilitation not only does not conflict with state court jurisdiction, but, also, extends protection to the estate and all other creditors involved.

The mortgagor's right in equity to redeem after default is protected by the Courts, as an "equity of redemption." This right to redeem upon payment of the mortgage debt, to regain legal title, exists until after the property is sold and the sale is confirmed by the Court. In addition to the protection afforded in a court of equity, there is a statutory right of redemption in Ohio as enacted by O.R.C. § 2329.33 (G.C. § 11690) of a more limited nature. See 37 *O.Jur.2d Mortgages* § 271; *Richland County Mut. Ins. Co. v. Sampson,* 38 Ohio St. 672 (1883); *Bradfield v. Hale,* 67 Ohio St. 316, 65 N.E. 1008 (1902).

The equity of redemption does not negate an acceleration clause in a real estate mortgage, *per se,* which is apparently enforcible in Ohio in some courts (*Peoples Sav. Ass'n*

*v. Standard Industries, Inc.*, 22 Ohio App.2d 35, 51 Ohio Op.2d 43, 257 N.E.2d 406 (Ct. App.Lucas Co. 1970)) although the Supreme Court of Ohio has not addressed the question, in any of the many ramifications. The trend of authority outside Ohio would seem to indicate that certain acceleration clauses (due-on-sale clauses) are invalid as restraints on alienation, depending on the circumstances, unless enforcement is reasonably necessary to protect against the impairment of the security or the risk of default. What is here pertinent is the principle that the courts are looking to the purpose and thrust of acceleration clauses as restraints on alienation which in equity may be applicable to the Chapter 13 process. See Annotation; 69 A.L.R.3d 713, 732–734; and the recent decisions in *Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal. Rptr. 379, 582 P.2d 970 (1978) and *Dawn Investment Co., Inc. v. Superior Court of Los Angeles County*, 30 Cal.3d 695, 180 Cal. Rptr. 332, 639 P.2d 974. Even those courts which are recently enforcing the acceleration clauses imposed by lenders are doing so with an element of reluctance. See *Mills v. Nashua Federal Savings & Loan Ass'n*, N.H., 433 A.2d 1312 (1981), wherein the court said, "We have recognized the detrimental effects that often result in transactions involving such adhesion contracts or overreaching by one party," *Pittsfield Weaving Co. Inc. v. Grove Textiles, Inc.*, 121 N.H. 344, 430 A.2d 638, 640 (1981). The court there further commented that a court may refuse to enforce such an acceleration clause if it would be unconscionable or inequitable, even though it then refused to enjoin the mortgagee's sale.

Even though the highest court in Ohio has not spoken the final word, the Supreme Court of Ohio in *Great Northern Savings Company v. Ingarra*, 66 Ohio St.2d 503, 423 N.E.2d 128 (1981) likewise follows an equity rule in enforcing acceleration clauses (due-on-sale). After citing at page 506, 423 N.E.2d 128 the cases in other states which have held that such acceleration clauses constitute significant restraints on alienation and that enforcement of such clauses cannot be justified by any positive effect

such enforcement might have on the mortgage money market, particularly because such clauses fail to fully disclose the fact that they may be used to update a financial institutions mortgage portfolio and because such clauses are often the product of an inherently unequal bargaining process [citations omitted], the Supreme Court holds, at page 507, 423 N.E.2d 128 as follows:

"Even those jurisdictions holding that 'due on sale' clauses are ordinarily enforcible have held that such enforcement is subject to equitable defenses such as estoppel and unconscionability. Inasmuch as we hold that appellant is estopped from enforcing the clause against appellees, we need not reach the issue of whether such clauses are enforcible when the obligee does not have a reasonable concern regarding impairment of its security or return on its investment."

In the Chapter 13 context, the inequity of a sale by the mortgagee by means of a foreclosure sale which derogates from the value of the collateral (estate), which might be retained as a homestead or sold at a more advantageous price, prejudices the rights of other creditors and is, in effect, analogous to the same restraint on alienation.

The wording of 11 U.S.C. § 1322(b)(5) and § 1328(a)(1) clearly indicates that the Congress intended that "curing of any default" as used in § 1322(b)(5) means placing the parties in the same position they would have been had no default transpired. "Last payment" in § 1322(b)(5) clearly contemplates the final payment as agreed by the parties in the mortgage contract. The very core of Chapter 13 depends upon retention of an exception to discharge under § 1328 to cope with "long term debt," specifically a debt which is paid after completion of a three (or not to exceed five) years plan confirmed by a court. By thus protecting a debtor in his rehabilitation, and retention of a homestead, the interests of all other creditors are also countenanced.

In conclusion, looking to the facts *instanter*, it is found that there is insufficient

evidence to draw any sound conclusions as to the valuation of the mortgaged properties. No plaintiff has submitted any evidence, although the Debtors' schedules estimate substantial realizable values.

There is also insufficient evidence to ascertain with the proper degree of certainty the exact status of the state court foreclosure suits. The facts in *Federal National Mortgage Association v. Ward* indicate that the suit is in judgment, but no particulars are submitted.

The defendant debtors have submitted insufficient evidence to enable this Court to determine properly whether or not the mortgagees are adequately protected, as to the values of the claims as of the effective date of the Plan and the feasibility of the Plans. The facts do demonstrate that the secured obligations have been in default for inordinate periods before foreclosure suits were instituted, casting skepticism as to both feasibility and good faith, in order to comply with 11 U.S.C. § 1325.

As long as the mortgagees are adequately protected by the value of the collateral, the debtors should be permitted to make payments to the Trustee for the purpose of curing all default, existing prior to the institution of the Chapter 13 proceedings and debtors should be enabled to continue making the regular contract monthly payments when due to the Trustee for the benefit of the mortgagees.

## V

Even under a *Soderlund ratio decidendi* the funds accumulated for the purpose of providing adequate protection to the mortgagee during an equitable extension of the automatic stay should be distributed either to the mortgagees, if accepted, or refunded upon closing the Chapter 13 cases to the debtor for the purpose of exercising the equity of redemption in the state court foreclosure proceedings instituted by the mortgagees. Hence, the results obtained in *Soderlund* would be similar upon confirmation of the Plans. Whether or not mortgagee-plaintiff in the state court foreclosure suit has standing to pursue the foreclosure process to a forced, distress sale (in light of the fact that the mortgagor's funds are available to the mortgagee to eliminate any alleged default), would be a question to be presented to the state court. In any event, the mortgagors (debtors) would have funds available for the purpose of seeking substitute financing to keep and maintain their home. If the plaintiff-mortgagee in the state court suit would still persist in pursuing a forced sale at foreclosure, despite having adequate protection from the mortgage and the accumulated funds available to bring the mortgage current, then, in that event, the Chapter 13 Trustee would be authorized to refund the accumulated funds to debtors, thereby permitting the Debtors to redeem through the foreclosure process and the equity in the mortgaged property.

Hence, recognizing equities in Chapter 13 to cure the defaults and avoid unconscionable liquidation because of stereotyped acceleration of contract rights accomplishes directly what could be accomplished under *Soderlund* by staying sale in the state court.

ORDERED, ADJUDGED AND DECREED that the Debtors should be, and are hereby, granted leave for two weeks to file modified Plans conformably to the foregoing conclusions. It is further

ORDERED, ADJUDGED AND DECREED that Plaintiffs should be, and are hereby further stayed from continuation of actions against the defendant Debtors and enforcement of judgments against the property of the estates to enable the Debtors to attempt to liquidate their interests in the collateral mortgaged at a more realistic value pursuant to modified plans, to protect the interests of other creditors, if defaults cannot be feasibly cured within the time frame of 11 U.S.C. § 1322(b)(5), so long as the respective plaintiff mortgagees are adequately protected, or until further order herein.