**In re Konstantinos J. KOKKINIS and Joyce E. Kokkinis, his wife, Debtors.**

**TINLEY PARK BANK, Plaintiff,**

v.

**Craig PHELPS, Trustee, Defendant.**

**No. 82 A 1493 (82 B 4500).**

United States Bankruptcy Court,
N. D. Illinois, E. D.

Aug. 9, 1982.

Earle S. Karno, Oak Lawn, Ill., for plaintiff.

Melvin J. Kaplan, Chicago Ill., for debtors.

MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action involves a complaint by plaintiff, Tinley Park Bank (hereinafter referred to as plaintiff), seeking to modify

the automatic stay granted to debtors Konstantinos J. Kokkinis and his wife, Joyce E. Kokkinis (hereinafter referred to as debtors). The stay in question stems from a Chapter 13 petition filed by the debtors on April 5, 1982.

On April 26, 1980, the debtors executed a second mortgage agreement with the plaintiff. This agreement provided in part that in exchange for lending the debtors $15,-000.00, the plaintiff would receive thirty-six (36) monthly installments of $572.20, beginning on June 1, 1980. This agreement was secured by a second mortgage trust deed on the debtors' home at 159th Street and 114th Court, Orland Park, Illinois. The trust deed was recorded on April 30, 1980.

As is the standard practice in mortgage contracts, the second mortgage agreement between the debtors and the plaintiff contained a provision which accelerated the remaining balance owed to the plaintiff upon a default by the debtors. On April 13, 1981, after the debtors were three months delinquent, the plaintiff exercised its rights under the acceleration clause of the second mortgage and filed a foreclosure suit. On August 25, 1981, the Circuit Court of Cook County, Illinois entered a decree of foreclosure and sale against the debtors. On October 6, 1981, a judicial sale of the debtors' home was held by the Sheriff of Cook County. Plaintiff, being the successful bidder at a price of $17,274.33, received a certificate of sale.

In Illinois, a final judgment of foreclosure and sale causes a mortgage to be merged into the judgment. *In re Jenkins*, 14 B.R. 748, 749–50 (Bkrtcy.N.D.Ill., 1981). The mortgagor has six months from the judicial sale to redeem his realty. Ill.Rev. Stat. Ch. 77, §§ 18–28 (1979) (Redemptions).

On April 5, 1982, one day before the six month redemption period was to expire, the debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. The debtors argue that their right of redemption is property of the estate under 11 U.S.C. § 541. *Ravenswood v. Patzold*, 81 C 5128, slip op. at 2–3 (N.D.Ill., Feb. 7, 1982).

Since the automatic stay of 11 U.S.C. § 362 applies to a right of redemption, *id.*, the debtors contend that they should be entitled to cure the judgment over the life of the Chapter 13 plan and retain possession of the home.

Plaintiff argues that by operation of the principle of merger, the debtors no longer hold a mortgage, thus precluding them from curing arrearages under the proposed Chapter 13 plan. Plaintiff filed this complaint on April 26, 1982, seeking to modify the automatic stay provisions of Section 362 in order to receive the Sheriff's deed on the debtors' home. Consequently, the issue to be decided by this court is whether a debtor can cure arrearages on a mortgage after a final decree of foreclosure and sale has been entered and executed.

To address this issue, one must look to the provisions of Section 1322 of the Bankruptcy Code. The relevant provisions of Section 1322 are as follows:

... the plan shall—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due ...

(10) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322(b)(2), (3), (5), (10) (1979).

When Section 1322 is read in conjunction with the legislative history behind Chapter 13, debtor rehabilitation is the pervasive theme. *See* H.R.Rep.No.595, 95th Cong., 1st Sess. (1977), reprinted in (1978) U.S.Code Cong. & Ad.News 5963; S.Rep.

No.989, 95th Cong., 2d Sess. (1978), reprinted in (1978) U.S.Code Cong. & Ad.News 5787; Report of the Commission on the Bankruptcy Laws of the United States ("Commission Report"), H.R.Doc.No.137, 93d Cong., 1st Sess., Pt. 1 (1973), reprinted in App. 2 Collier on Bankruptcy (15th Ed. 1980).

■ "The attempt to save homesteads is one of the primary purposes and ends of Chapter 13 rehabilitation." *First Investment Co. v. Custer*, 18 B.R. 842, 846 (Bkrtcy.S.D.Ohio, 1982). Almost every lien document, whether it be securing personal or real property, has an acceleration provision. *Id.* By prohibiting a debtor from curing defaults on loans which have been accelerated, the intent of Chapter 13 to facilitate debtor rehabilitation would be defeated.

This court will not permit an acceleration provision to inhibit debtor rehabilitation. The debtors herein propose to cure their default by paying both the arrearages and the remaining balance owed to the plaintiff over the life of their plan. Since Section 1322(b)(3) allows for the curing of any default, this court holds that the debtors are entitled to cure their default in the manner that they have proposed.

Although case law regarding the curing of accelerated mortgages has not been uniform, there has been support for the use of Section 1322(b)(3) to allow the debtor to cure arrearages on pre-petition accelerations. *See First Investment Co. v. Custer*, 18 B.R. at 848. The court in *Custer* noted that when Section 1322(b)(5) and Section 1322(b)(3) are read in pari materi, the intent of Congress to allow debtors to cure arrearages even after pre-petition acceleration of mortgages is apparent. *See also, In re Rippe*, 14 B.R. 367, 369 (Bkrtcy.S.D.Fla., 1981); *In re Sapp*, 11 B.R. 188 (Bkrtcy.S.D. Ohio, 1981). Moreover, other Bankruptcy Courts have noted that the filing of a Chapter 13 plan tolls the running of the period of redemption and that in appropriate circumstances a debtor may redeem the property within the terms of the Chapter 13 plan. *See e.g., In re Medenica*, 5 B.C.D. 334, 336 (1979).

■ In order to determine whether the appropriate circumstances exist in the case at bar, the court should consider (1) whether or not the plaintiff is adequately protected and (2) whether or not the debtors have proposed a plan in good faith and with a realistic possibility of completion.

First, the plaintiff introduced a 1980 appraisal which valued the debtors' home at $57,000.00. (Debtors, on their schedules, listed the home as having a $70,000 fair market value.) The home is secured by a first mortgage with Orland State Bank for approximately $15,000.00. Coupled with the $17,274.33 claim that plaintiff has against the debtors, there is at least $24,-000.00 of equity in the home which is unencumbered by a lien. Thus, this court feels that the plaintiff has adequate protection based upon the debtors equity in their home to protect the plaintiff should the debtors later fail to complete their proposed plan.

Second, this court finds that the aforementioned plan is offered in good faith. The debtors (1) filed a timely answer in the initial foreclosure proceedings; (2) accurately listed the plaintiff's debt in their schedules; and (3) were not grossly overdue in payments to the plaintiff (three months overdue). Additionally, the plan initially seems to be feasible based upon the debtors' projected income of $1800.00 per month.

The debtors also argue that since Chapter 11 expressly allows the de-acceleration of a debt, 11 U.S.C. § 1124 (1979), a similar right should exist under Chapter 13. This court finds support for this argument in Section 1322(b)(10) of the Bankruptcy Code, which states that the plan may include any other appropriate provision not inconsistent with Title 11. *See also, In re Taddeo*, 9 B.R. 299 (Bkrtcy.E.D.N.Y., 1981), *aff'd*, 15 B.R. 273 (E.D.N.Y., 1981) (Judge Parente, in a post-judgment prejudicial sale case, noted that provisions of Chapter 13 should be read in pari materia with provisions of Chapter 11. Accordingly, since "Chapter 11 extends the right of post-acceleration cure to the business debtor, a fortiori, the generally

**356**

more liberal Chapter 13 provisions should do the same for the consumer debtor.").

In the case at bar, a judicial sale was held pursuant to the foreclosure judgment before the debtors filed their Chapter 13 petition. Thus, the plaintiff alleges that the normal protective devices of Chapter 13 are inapplicable to the debtors. The plaintiff cites *United States v. Crawford*, 2 B.R. 589 (Bkrtcy.N.D.Ill., 1980) and *In re Jenkins*, 14 B.R. 748 (Bkrtcy.N.D.Ill., 1981), for the proposition that once a decree of foreclosure and sale has been entered, the mortgage is merged into the judgment, precluding the debtor from curing arrearages. However, in the above-mentioned cases, the debtors wanted to reinstate the payment plan under a first mortgage. Since the debtors herein propose to pay off the second mortgage during the life of their plan, the same conclusion will not result. The theme of debtor rehabilitation which pervades the legislative history of Chapter 13 extends to situations such as the case at bar in order to facilitate the curing of defaults. *Cf. In re Arvinger*, 81 B 11230 (Bankr.N.D.Ill., Jan. 27, 1982) (The court held that a judgment sale is not effective until the period of redemption has run, thus allowing debtor to cure arrearages even though a Chapter 13 petition was filed subsequent to the sale.).

Accordingly, this court denies plaintiff's motion to modify the automatic stay provisions of § 362. The debtors are to furnish a draft order in accordance with this opinion within 5 days.*

---

* This decision is entered in compliance with the stay of enforcement until October 4, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Mara-*

*thon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982).