**In re Norman Dale BRITTON, Debtor.**

**WATERFIELD MORTGAGE COMPANY, Appellant,**

v.

**Norman Dale BRITTON and Andrew Gadzala, Trustee, Appellee.**

Civ. No. H81–632.
Bankruptcy No. 80–60826.
Adv. No. 81–6046.

United States District Court,
N.D. Indiana,
Hammond Division.

July 15, 1982.

Fred M. Cuppy, Merrillville, Ind., for appellant.

Steve Tokarski and Andrew Gadzala, Gary, Ind., for appellee.

MOODY, District Judge.

Creditor appeals from an adverse judgment in the Bankruptcy Court on its Petition for Relief from the Automatic Stay. The Bankruptcy Court judgment is REVERSED.

## FACTS

The facts in this case are as follows: On October 6, 1977, the debtor executed a mortgage note in favor of Meridian Mortgage Company for the amount of $23,500.00. The note was secured by the debtor's residence and included an acceleration clause. The note and the security interest were assigned to Waterfield Mortgage Company, Inc. on January 31, 1980. The debtor defaulted on his mortgage payments beginning in July, 1979 and the mortgagee filed a state foreclosure action on December 21, 1979. On May 2, 1980, the Lake County Circuit Court entered a judgment of foreclosure in the amount of $26,038.46 plus interest. A sheriff's sale was scheduled for August 1, 1980.

The debtor filed his petition in bankruptcy under Chapter 13 on June 26, 1980. The sale of the debtor's residence was thus automatically stayed under 11 U.S.C.S. § 362. The debtor filed a Chapter 13 Plan which was amended on July 16, 1980 and confirmed without objection on September 18, 1980. The Plan provided for payment to the creditor herein all current mortgage payments as well as the outstanding arrearages. On February 10, 1981, the creditor filed its Petition for Relief from the Automatic Stay. The petition was granted by the Bankruptcy Court on April 15, 1981 which order was subsequently set aside. On October 7, 1981, after a trial on the matter, the Bankruptcy Court denied the creditor's petition. The creditor appeals to this Court for reversal of the Bankruptcy Court order.

## MEMORANDUM

The creditor seeks relief from the automatic stay. Such relief is provided in 11 U.S.C. § 362(d):

"On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

The Bankruptcy Court below held that the creditor's interest was protected; that the debtor had equity in the real estate; and that the property was necessary for the debtor's rehabilitation. This Court holds that the Bankruptcy Court erred in finding that the creditor's interest is adequately protected and thus, there is no need to address the question of whether the debtor has equity in the property or whether the property is necessary for rehabilitation.[1]

There is no adequate protection of the creditor's interest in the property because the debtor's plan does not provide full payment to the creditor and probably cannot do so. The debtor's plan proposes to pay to

---

1. This opinion will also not discuss the question of whether the criterion in § 362(d)(2)(B) (whether property is necessary for an effective reorganization) is applicable in Chapter 13 proceedings.

the creditor certain amounts to cover the arrearages in the mortgage payments and also to pay the current monthly mortgage payments as they become due. The creditor argues that this plan cannot successfully rehabilitate the debtor because it has not provided for the payment of the entire amount due to the creditor under the state court foreclosure judgment. The creditor's argument is well-taken.

The initial question posed here is whether a Chapter 13 plan may reinstate a mortgage after the mortgage has been foreclosed by a state court judgment. Several lower courts have addressed this issue and have arrived at opposite conclusions. Representative of these decisions are *In Re Taddeo*, 9 B.R. 299 (Bkrtcy.Ct., E.D.N.Y.1981), *aff'd.* 15 B.R. 273 (D.Ct.E.D.N.Y.1981) and *In Re Pearson*, 10 B.R. 189 (Bkrtcy.Ct., E.D.N.Y.1981). *Taddeo* holds that a debtor may cure his mortgage default by use of a Chapter 13 plan up until the time of the foreclosure sale. *Pearson* holds that once a state court foreclosure judgment is entered, a Chapter 13 plan must provide for payment of the full amount of the judgment and such a plan will not reinstate the original schedule of payments as provided in the mortgage. After consideration of the relevant law on this subject, this Court finds the line of cases consistent with the *Pearson* holding to be more persuasive for several reasons. First, under Indiana law, owner or a part-owner of property may only redeem foreclosed property on full payment of the judgment amount. Second, 11 U.S.C.S. § 1322(b)(5) permits a debtor to cure a default on a loan secured by the debtor's principle residence only where the last payment on the loan is due after the final payment under the debtor's Chapter 13 plan. In the present case, there are no installments due after the final payment under the plan and § 1322(b)(5) is not applicable. Finally, if a debtor is permitted to utilize a Chapter 13 plan to revive a mortgage foreclosed by a state court judgment, great uncertainty will result as to the effect of that judgment.

In Indiana, where a judgment of foreclosure has been entered, and before the actual sale of the property, an owner or part-owner of the real estate may redeem the property only by paying the "amount of the judgment, interest and costs." Ind.Code Ann. § 32–8–16–3 (Burns 1980 Repl.). There is no authority in Indiana for the avoidance of a foreclosure judgment by the payment of the arrearages only. There is also nothing in the Bankruptcy Code to indicate Congressional intent that Chapter 13 plans can be used to annul a state court foreclosure judgment. This Court cannot assume such an intent without language making that intent clear.

The authority to cure defaults in 11 U.S.C.S. 1322(b)(5) may also not be used to undo a final state court judgment. That section permits a Chapter 13 plan to provide for the curing of a default on a "secured claim on which the last payment is due after the date on which the final payment under the plan is due." In the present case, no payment on the loan is due after the final payment under the debtor's plan. Rather, the entire amount owed to the creditor is due on the entry of the foreclosure judgment. This occurred before the debtor filed his petition in bankruptcy. As a result, the language of § 1322(b)(5) provides no authority for the debtor to void the final state court foreclosure judgment.

█ Finally, it is clear that Congress did not intend that a debtor's Chapter 13 plan could be used to void a state court foreclosure judgment. Such a result would create great uncertainty as to the effect of the state court judgment. If a debtor is permitted to reinstate the mortgage, what is to be the effect of the outstanding judgment? Is the judgment completely voided or does it take effect after the debtor completes his Chapter 13 plan? If a debtor may annul a final foreclosure judgment, what is the effect on the availability of home mortgage loans? This last point was addressed by the Bankruptcy Court in *Pearson:*

> "This Court agrees that Chapter 13 should be liberally interpreted, but in view of the serious implications for the home mortgage market of the interpreta-

tion urged by the debtors, a policy change of this magnitude should not be imputed to Congress, absent some clear expression of legislative intent. Permitting a debtor to reinstate the original terms of a defaulted mortgage after a judgment, providing only that it was done prior to sale, would necessarily affect adversely the home mortgage market by making such mortgages less attractive to investors. These are serious policy considerations. Had Congress intended a policy change of this magnitude, with all the complications such a change would produce, it is reasonable to assume that Congress would have used language appropriate to that end. It did not."

For this reason and the others discussed above, this Court holds that where a creditor obtains a judgment of foreclosure in a state court before the debtor files a petition in bankruptcy under Chapter 13, the debtor's Chapter 13 plan cannot merely provide for the payment of the arrearages and thereby reinstate the mortgage.[2]

■ Since the debtor's Chapter 13 plan in this case only provides for payment of the arrearages and current mortgage payments and there is no evidence that the debtor could pay the entire foreclosed judgment, the creditor's interest in the property is not adequately protected. The debtor places much emphasis on his contentions that he has equity in the property and that he is current in his payments under the Chapter 13 plan. The evidence in the lower court, viewed in a light most favorable to the judgment does indicate that the debtor has equity in the property, although his equity cushion in this instance is very thin.[3] As for the contention that the debtor is current in his Chapter 13 payments, the creditor maintains that it has received none of the money owed to it and that there was insufficient evidence admitted in the trial of this case as to the status of the debtor's payments. Assuming *arguendo* that the debtor is current in his payments, those payments do not even come close to paying off what is actually owed to the creditor, i.e., the entire amount of the state court judgment. Thus, any support which the debtor might elicit from his argument that he is current with his Chapter 13 payments is of no comfort to the creditor. If the debtor's plan cannot reinstate the mortgage, all it seemingly can accomplish is a postponement of the foreclosure sale until the Chapter 13 plan is completed. This cannot be viewed as adequate protection of the creditor's interest in the property.

■ The debtor presents one final argument that the stay should not be lifted in this case. He maintains that although the creditor is requesting relief from the stay under 11 U.S.C.S. § 362(d), it is actually attacking the debtor's Chapter 13 plan in an untimely manner. There does not appear to be any dispute that the creditor did not timely file objections to the debtor's plan. *See* Rules of Bankruptcy Procedure, Rule 13–213. Moreover, where a Chapter 13 plan is confirmed, both the creditor and debtor are bound by the plan. 11 U.S.C.S. § 1327(a). Nevertheless, this Court can find no authority for the argument that

2. One other argument in favor of allowing the reinstatement of a foreclosed mortgage by the use of a Chapter 13 plan should also be addressed. The Bankruptcy Court in the *Taddeo* case noted that a Chapter 11 business reorganization plan may reinstate the original payments of an accelerated mortgage pursuant to 11 U.S.C.S. § 1124. The *Taddeo* court further cited the similarity between Chapter 11 and Chapter 13 as support for its conclusion that the provisions of § 1124 should also apply where a Chapter 13 plan is utilized. *Id.* at 302–03. This Court finds the logic employed in *Taddeo* to be unpersuasive. It is clear that if Congress had intended the provisions of § 1124 to apply in Chapter 13 cases, it need only have included some language indicating that intent. Since Congress has not done so, there is no basis for the conclusion that a Chapter 13 plan may reinstate a foreclosed mortgage pursuant to the provisions applicable to a Chapter 11 plan. *See In re Canady*, 9 B.R. 428, 430 (Bkrtcy.Ct., D.Conn.1981).

3. The Bankruptcy Court below found the fair market value of the debtor's residence to be $28,000.00. The state court foreclosure judgment was in the amount of $26,038.46. This leaves an equity cushion of 7%, computed as follows:

$$(\$28{,}000.00 - \$26{,}038.46) \div \$28{,}000.00 = .07$$

failure to timely object to the confirmation of a Chapter 13 plan also prevents an interested party from requesting relief from the automatic stay. The debtor's argument is similar to an issue presented to the Bankruptcy Court in *In Re Stewart,* 7 B.R. 921 (Bkrtcy.Court, W.D.Pa.1981).

In *Stewart,* the Bankruptcy Court held that a request for relief from a stay under § 362(d) may be filed after a Chapter 13 plan is confirmed. In that case, the debtor's plan attempted to cure a default in scheduled payments to the creditor but did not provide for full payment of the arrearages in a reasonable time. The debtor argued that since the creditor was provided for in the Chapter 13 plan, the subject property vested in the debtor free and clear of any claims by the creditor under 11 U.S.C.S. § 1327(c).[4] Consequently, the debtor contended that the property was no longer part of the bankruptcy estate and that the automatic stay was already terminated pursuant to 11 U.S.C.S. § 362(c)(1).[5] The *Stewart* court found § 1327(c) inapplicable because the creditor was not "provided for" by the debtor's plan because the plan did not propose full payment of the arrearages owed to the creditor. *Id.* at 923. The creditor's request for relief from the stay was granted. In the same way, this Court finds that the creditor here is not "provided for" in the debtor's plan because that plan does not even purport to pay the creditor the full amount owed to it. As such, the confirmation of the plan did not cause property to vest free and clear in the debtor and thereby terminate the automatic stay under § 362(c)(1). Rather, the stay remained in effect, the creditor's lien remained on the property and the creditor can properly request relief from that stay by showing that its interest in the property is not adequately protected.

It is therefore ORDERED that the Bankruptcy Court decision is REVERSED and that the creditor shall be relieved from the automatic stay imposed under 11 U.S.C.S. § 362.

---

**4.** 11 U.S.C.S. § 1327 reads in relevant part: "(b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(c) Except as otherwise provided in the plan or in the order confirming the plan, the prop-

erty vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan."

**5.** *See In re Brock,* 6 B.R. 105 (Bkrtcy.Ct., N.D. Ill.1980).