In re Loretta **SMITH**, Debtor.

In re Michael **GRECO**, Debtor.

**Bankruptcy Nos. 83 B 15286, 84 B 2434.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 9, 1984.

Edward S. Boraz, Landesman & Schwartz, Chicago, Ill., for Loretta Smith.

Edward Freud, Ruff, Weidenaar & Reidy, Ltd., Chicago, Ill., for Lakeview Bank.

Bennett Kahn, Melvin J. Kaplan, Chicago, Ill., for Michael Greco.

Raymond Ostler, Gomberg & Sharfman, Ltd., Chicago, Ill., for United Savings of America.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

Presently before the court are two cases in which the debtors desire to treat mortgage defaults after judicial sales through Chapter 13 plans. Because the cases vary factually so as to mandate different results, the court will consider both cases together in order to highlight the relevant factual distinctions.

## I. FACTS OF *IN RE LORETTA SMITH*

Glen E. Smith and Loretta Smith owned a residence located at 24 Lockman Circle, Elgin, Illinois. Lakeview Bank was the owner and holder of a promissory note secured by a mortgage on that property in the amount of $67,500. On September 22, 1982 Lakeview Bank initiated foreclosure proceedings against Glen and Loretta Smith. On January 24, 1983, a Judgment of Foreclosure and Sale was entered against the Smiths. On March 31, 1983, a sheriff's sale was held at which Lakeview was the successful bidder. On May 12, 1983 and July 18, 1983, Glen Smith filed Chapter 7 petitions. An order was entered on November 11, 1983 modifying the automatic stay in the Chapter 7 case. Lakeview Bank received the sheriff's deed on December 8, 1983 and recorded it on December 9, 1983. On December 8, 1983 the Kane County Court issued a Writ of Assistance to remove the Smiths from the premises. On December 12, 1983, Loretta Smith

filed her petition for relief under Chapter 13 of the Bankruptcy Code. Subsequently, Loretta Smith filed a Chapter 13 plan which proposed to pay Lakeview 100% of liens securing the residence over a five year period.

The position of Lakeview Bank is that Loretta Smith's rights in the property terminated upon the recordation of the sheriff's deed. Loretta Smith argues that the period of redemption was tolled by the automatic stay upon the filing of Glen Smith's Chapter 7 petition and that the period of redemption was tolled for 183 days. Under that theory, Loretta Smith would have filed her Chapter 13 petition during the redemption period.

## II. FACTS OF *IN RE MICHAEL GRECO*

Michael Greco had a two flat building located at 1142 West Addison in Chicago, Illinois. United Savings of America ("United") held the first mortgage on that property. There was also a second mortgage on the property. The debtor defaulted on the mortgage and United filed foreclosure proceedings in the Circuit Court of Cook County. A Judgment of Foreclosure and Sale was entered on August 15, 1983. A sheriff's sale was held on October 5, 1983 at which United was the successful bidder. The period of redemption was to expire April 6, 1984. Greco filed his Chapter 13 petition on February 24, 1984. The plan provides that United shall be paid in full from the proceeds of sale of the real estate within six months of confirmation. The plan also provides for interest payments at the statutory rate. On April 5, 1984 this court confirmed Greco's Chapter 13 plan subject to the right of United to demonstrate to the court that it lacks authority to confirm a plan which allows the debtor pay amounts of defaults beyond the running of the period of redemption except as extended by Section 108 of the Bankruptcy Code.

## ISSUES

Thus, the two fact situations present the following issues for resolution:

1. Whether Section 362 of the Bankruptcy Code "tolls" the running of a statutory period of redemption in a Chapter 7 case, so that there may be a redemption period remaining when a Chapter 13 plan is subsequently filed.

2. Whether the court may, pursuant to its equity power under section 105 of the Bankruptcy Code, extend the period of redemption.

3. Whether the court may confirm a Chapter 13 plan where redemption under the plan would extend beyond the date on which the redemption period would have expired under state law and exceed the 60 day extension provided for by Section 108(b) of the Bankruptcy Code.

## DISCUSSION

Interpretation of section 362 of the Bankruptcy Code is relevant to a determination of whether, in a Chapter 7 proceeding, the redemption period may be "tolled" or extended.

Section 362(a)(3) of the Code provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay applicable to all entities, of—
(3) any act to obtain possession of property of the estate or of property from the estate...

11 U.S.C. Section 362 (West Supp. V 1981). The United States Court of Appeals has recently considered that issue in *Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), and held that section 362 does not toll the running of the redemption period.

Several determinations are necessary to the resolution of whether section 362 tolls the running of the redemption period. The first of those determinations is the nature of the debtor's interest in the property and whether that interest constitutes property of the estate under section 541(a)(1) of the Bankruptcy Code which defines property of the estate as "all legal or

equitable interests of the debtor in property as of the commencement of the case." The determination of that property interest is a matter of state law. Although the *Johnson* court determined that "only the right of redemption, rather than the property itself" passes into the estate if the period of redemption has not expired prior to filing the petition, 719 F.2d at 276, that right of redemption is property of the estate to which the automatic stay may apply. *Matter of Medenica*, 20 BCD 804, 807 (Bankr.N.D.Ill.1979) and cases cited therein.

The purposes of the stay provisions are to provide the debtor with a breathing spell from the collection efforts of creditors and to assure a fair distribution of the estate to all creditors by prohibiting the dissipation of the estate in several proceedings. *Johnson*, 719 F.2d at 276; S.Rep. No. 989, 95th Cong., 2nd Sess. 54–5, *reprinted in* (1978) U.S. Code Cong. & Admin. News 5787, 5840–41; H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 340, *reprinted in* (1978) U.S. Code Cong. & Admin. News 5963, 6296–97. Although this court agrees that tolling the redemption period is consistent with the general policies of the Bankruptcy Code, and has previously so held (*see In re Medenica* interpreting the stay provisions of the Bankruptcy Act), it is nevertheless persuaded to follow the reasoning of the *Johnson* court. The *Johnson* court determined that the expiration of a period of redemption which carries with it the automatic transfer of property is neither an "act" or "proceeding" nor enforcement of a right within the meaning of section 362(a) 719 F.2d at 276. That court notes, and this court is inclined to agree, that had Congress intended to provide for the tolling of a redemption period, that the language of the statute would have more specifically provided for such a tolling. Although this court thinks that such a tolling may be consistent with the policies underlying the Bankruptcy Code, it will not act as a legislature to read that tolling into the statute.

■ Under the facts of *Smith*, a "tolling" of the state law redemption period is necessary in order for the debtor to have filed her Chapter 13 petition within the period of redemption. Without the tolling during the pendency of the Chapter 7 case, no redemption period would have remained when the Chapter 13 was filed. This court following *Johnson*, *supra*, holds that the period of redemption is not tolled by Section 362. Moreover, the court finds no authority in section 105 to toll the running of the redemption period. *Id.*

Therefore, the court hereby grants the motion of Lakeview Bank to modify the automatic stay.

The second matter before the court does not involve a mere "tolling" of the statutory period of redemption. Rather, the question to be resolved is whether the court has the power to confirm a Chapter 13 plan when that Chapter 13 petition was filed during the statutory period of redemption but after a judicial sale had occurred. For the reasons set forth below, this court concludes that a Chapter 13 plan which proposes to pay the mortgagee 100% of the debt within a reasonable time may be confirmed where the Chapter 13 petition was filed after a judicial sale, but during the period of redemption.

Section 1322(b) of the Bankruptcy Code provides the basis for confirming such a Chapter 13 plan. That section provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (2) *modify the rights of holders of secured claims* other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;
>
> (3) provide for the *curing or waiving of any default;* ...
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the *curing of any default* within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the *last payment is due after the date*

*on which the final payment under the plan is due* (emphasis added).

11 U.S.C. § 1322(b) (1982).

There is apparently no consensus regarding what the proper rule should be under these sections of the Bankruptcy Code. Several recent cases have addressed similar issues. Those cases have also attempted to categorize factual situations under Chapter 13 where the issue of curing defaults arises.

First, as noted recently by the district court in *In the Matter of Skelly*, 38 B.R. 1000, 11 B.C.D. 1134 (D.Del.1984), *quoting* the bankruptcy court in *In re Gwinn*, 34 B.R. 936 (Bankr.S.D.Ohio 1983), the cases involving the cure issue fall into five categories.* In *Skelly*, the debtors filed their

Chapter 13 petition one day prior to the end of the redemption period under Delaware law. This court notes that the Seventh circuit, applying Wisconsin law, has recently reached a result opposite to that reached by the district court in *Skelly*. *Matter of Clark*, 738 F.2d 869 (7th Cir.1984).

The present facts fall within the fifth and "most adventurous view" as described by the *Gwinn* court. However, even though this is an "after-sale" case, this court notes that the present case is not one in which the debtor proposes to reinstitute the mortgage under its original terms. Rather, United will be paid in full within a matter of months. The Circuit Courts of Appeal have not yet addressed the issue of whether the plan can provide for curing a default after sale. At least two circuits

---

* An examination of the reported cases indicates that five basic positions have emerged. A small minority of courts have held that deceleration/reinstitution is not available once the mortgagee has exercised his contractual right to accelerate, regardless of whether or not the mortgagee has obtained a judgment. See *In re Soderlund* (Dist.Ct.), *supra* [18 B.R. 12 (S.D.Ohio 1981)]; *Matter of Allen*, 17 B.R. 119 [8 BCD 945] (Bkrtcy.N.D.Ohio 1981); *In re LaPaglia*, 8 B.R. 937 [7 BCD 333] (Bkrtcy.E.D.N.Y.1981).

Another, more sizeable group of cases have held that while deceleration is possible prior to judgment, it is no longer available once the mortgagee has obtained a judgment on the mortgage note. See *In re Anderson*, *supra* [16 B.R. 697 (Bkrtcy.S.D.Ohio 1982)]; *In re White*, 22 B.R. 542 [9 BCD 567] (Bkrtcy.D.Del.1982); *In re Mattocks*, 15 B.R. 379 (Bkrtcy.E.D.N.Y.1981); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn. 1981); *In re Jenkins*, 14 B.R. 748 [8 BCD 292] (Bkrtcy.N.D.Ill.1981); *In re Land*, 14 B.R. 132 [8 BCD 90] (Bkrtcy.N.D.Ohio 1981); *Matter of Wilson*, 11 B.R. 986 [7 BCD 1050] (Bkrtcy.E.D.N.Y. 1981); *In re Pearson*, 10 B.R. 189 [7 BCD 567] (Bkrtcy.E.D.N.Y.1981); *In re Canady*, 9 B.R. 428 [7 BCD 749] (Bkrtcy.D.Conn.1981); *In re Britton*, 35 B.R. 373 (D.C.N.D.Ind.1982). While this is a more widely held view than the *per se* prohibition espoused by the first group, it is still the minority view and has had only one recent convert. *In re Clark*, C.C.H. Bankr.Serv. Para. 69,341, 32 B.R. 711 (W.D.Wis.1983).

The third approach likewise allows deceleration and reinstitution, but does not speak to what impact, if any, a judgment would have on the availability of this opinion. See *In re Morrison*, *supra* [35 B.R. 996 (S.D.Ohio 1983)]; *In re Briggs*, 25 B.R. 317 (Dist.Ct.N.N.D.1982); *In re Davis*, 16 B.R. 473 (Dist.Ct.D.Kan.1981); *In re Cheeks*, 24 B.R. 477 (Bkrtcy.M.D.Ala.1982); *Mat-*

*ter of Wilder*, 22 B.R. 294 [9 BCD 642] (Bkrtcy. M.D.Ga.1982); *In re Rippe*, 14 B.R. 367 (Bkrtcy. S.D.Fla.1981); *In re First Investment Co. v. Custer*, 18 B.R. 842 (Bkrtcy.S.D.Ohio 1982); *In re Sapp*, 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981); *In re Beckman*, 9 B.R. 193 (Bkrtcy.N.D.Iowa 1981). This view is supported by several District Courts and would seem to be the overwhelming majority view.

The fourth view holds that deceleration and reinstitution are possible even after the mortgagee has obtained a judgment on the accelerated mortgage note. *In re Taddeo*, 685 F.2d 24 [9 BCD 556] (2d Cir.1982); *In re Acevedo*, 26 B.R. 994 (Dist.Ct.E.D.N.Y.1982); *In re Mueller*, 18 B.R. 851 (Bkrtcy.W.D.Ark.1982); *In re Young*, 22 B.R. 620 [9 BCD 607] (Bkrtcy.N.D.Ill.1982); *In re Hubbard*, 23 B.R. 671 [9 BCD 1008] (Bkrtcy.S.D.Ohio 1982); *In re McSorley*, 24 B.R. 795 (Bkrtcy.N.J.1982); *In re Tuchman*, 29 B.R. 39 (Bkrtcy.S.D.N.Y.1983); *In re Hardin*, 16 B.R. 810 (Bkrtcy.N.D.Tex.1982); *In re Taylor*, 21 B.R. 179 [9 BCD 399] (Bkrtcy.W.D.Mo.1982); *In re Smith*, 19 B.R. 592 [8 BCD 1340] (Bkrtcy.N.D. Ga.1982); *In re McCann*, 27 B.R. 678 (Bkrtcy.S. D.Ohio 1982). This seems to be a rapidly growing view and has been adopted by more appellate level courts than have any of the other views.

The fifth view is perhaps the most adventurous of all. It holds that deceleration and reinstitution are available even after the foreclosure sale, *as long as the state redemption period has not expired by the time the debtor files his bankruptcy petition*. See *In re Chambers*, 27 B.R. 687 [10 BCD 382] (Bkrtcy.S.D.Fla.1983); *In re Kokkinis*, 22 B.R. 353 [9 BCD 382] (Bkrtcy.N.D. Ill.1982); *In re Thompson*, 17 B.R. 748 [8 BCD 1040] (Bkrtcy.W.D.Mich.1982); *In re Gooden*, 21 B.R. 456 (Bkrtcy.N.D.Ga.1982); *In re Ivory*, 32 B.R. 788, 10 B.C.D. 1327 (Bkrtcy.D.Or.1983).

have determined that after initiation of foreclosure proceedings, *Grubbs v. Houston First American*, 730 F.2d 236, 11 B.C.D. 1081 (5th Cir.1984) and *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), a court may still confirm a Chapter 13 plan under the statutory cure provisions. As noted, the Seventh Circuit has held that a debtor may, at least in a lien state, reinstate a mortgage and cure defaults under a Chapter 13 plan after entry of a judgment of foreclosure. *Clark, supra* at 874.

■ To date, only other bankruptcy courts have held that de-acceleration and reinstatement of a mortgage are available even after a foreclosure sale. *See In re Kokkinis*, 22 B.R. 353 (Bankr.N.D.Ill.1982). This court tends to *agree* with that position for various reasons. The first of those reasons is that, as stated by the *Taddeo* court, "Congress did not labor for five years over this controversial question only to limit consumer debtors—intended to be the primary beneficiaries of the new Code—to the harsher remedies of state law." 685 F.2d at 25. The *Taddeo* court found no reason for state law to control what constitutes a "reasonable time" to cure a default pursuant to section 1322(b)(5). This court's power to confirm a Chapter 13 plan is a matter of federal law. *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Young*, 22 B.R. 620, 623 (Bankr.N.D.Ill. 1982); Sable, A Chapter 13 Debtor's Right to Cure Default Under Section 1322(b): A Problem of Interpretation, 57 Am.Bankr. L.J. 127 (1983). The simplest reason is that where state law conflicts with federal law, the federal law controls by virtue of the Supremacy Clause of the U.S. Constitution. U.S. Const. Art. 6, Cl. 2; *See Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Silver*, No. 82–2927 slip. op. (Bankr.N.D.Ill. November 22, 1982).

Legislative history of the Bankruptcy Code is less than clear regarding the extent to which the Code was intended to preempt state law. However, one purpose in enacting a new Chapter 13 was to change the former Chapter XIII insofar as it mandated applications which "result[ed] from a hodgepodge of state and federal statutory provisions." Sen.Rep. No. 95–989 at 5799.

■ The court has examined opinions which take the view that the mortgage law of a given state controls the decision of whether a Chapter 13 plan like the plan in issue here may be confirmed. *See, e.g., In re Skelly*, 38 B.R. 1000, 11 B.C.D. 1134 (D.Del.1984); *In re Crawford*, 2 B.R. 589 (Bankr.N.D.Ill.1980). There are concerns which tend to support the theory that state law governs the court's power to approve a plan. If state law were to control, in a "title" state, the mortgage is theoretically merged into the judgment of foreclosure making de-acceleration and cure impossible. In rejecting the view that state law controls, courts have noted that the title theory of mortgages is an ancient device which has outlived its intended purposes. *In re Young*, 22 B.R. 620, 622 (Bankr.N.D. Ill.1982); *In re Crawford*, 2 B.R. 589, 594 (Bankr.N.D.Ill.1980). The pervasive theme of debtor rehabilitation must be emphasized in reaching the conclusion that federal law must control the court's power to confirm a Chapter 13 plan.

It is noted that the Seventh Circuit, in *Clark*, mentioned the effect of Wisconsin mortgage law. 738 F.2d at 871. The *Clark* court observed that under Wisconsin law, the debtor retained an interest in the property. *Id.* However, under Illinois law, the debtor, after sale, still retains the right of redemption which is an interest in the property. Notwithstanding this distinction, variations in state mortgage law should not be determinative of the issue of confirming such a plan.

■ The debtor here proposes to cure all defaults within a reasonable time as contemplated by section 1322(b)(5). Although the rights of a secured creditor may not be modified pursuant to section 1322(b)(2), curing a default is not "modification" of a secured claim. *Clark*, 738 F.2d at 871; *In re Grubbs*, 730 F.2d at 246; *In re Taddeo*, 685 F.2d at 27.

■ This court may confirm such a plan under section 1322(b)(5). The bank has ar-

gued that once a judgment is entered, there remains no mortgage to de-accelerate and reinstate. Furthermore, according to this argument, the entire amount of the judgment is due immediately. In that instance, subsection (b)(5) would be unavailable because the debt would not be one which was due "after the date on which the final payment under the plan was due." 11 U.S.C. 1322(b)(5). *See In re Skelly,* 38 B.R. 1000, 11 B.C.D. 134 (D.Del.1984).

The *Clark* court rejected that argument on several grounds. First, the court observed that most security documents contain an acceleration provision. To give effect to those provisions would encourage filing bankruptcy petitions at the earliest possible time. This the court chose not to do.

Second, the *Clark* court determined that to cure meant to return the situation to its pre-default status. 738 F.2d at 874. That definition is equally applicable after a sale has occurred.

A debtor may also redeem under the terms of a Chapter 13 plan. The right of redemption is property of the estate and the court may confirm a plan which provides for redemption within the term of the plan. In the present case, the court has confirmed a plan which provides for payment of the full amount within six months of confirmation. The court also has the power to confirm a plan which calls for redemption within the five year limit prescribed in § 1322(c) of the Bankruptcy Code. The plan at issue in *Greco* proposes to redeem within only six months of confirmation. Therefore, the court had the power to confirm that plan.

Having concluded that the Court has the power to confirm a Chapter 13 plan after a judicial sale has been held, but before the redemption period has expired, the question becomes which cases are appropriate ones in which to exercise that power. The relevant considerations are: 1) whether a creditor is adequately protected; and 2) whether the plan is feasible and proposed in good faith.

In *In re Jenkins,* 14 B.R. 748 (Bankr.N. D.Ill.1981), this court held that a creditor-mortgagee having a valid and final judgment of Foreclosure and Sale is entitled to the full payment of such judgment under any Chapter 13 plan proposed by a debtor-mortgagor. *Id.* at 751.

In the present case, the debtor proposes to pay United in full from the proceeds of the sale within six months of confirmation. Additionally, the debtor proposes making payments representing interest at the statutory rate until the debt is paid in full. The plan before the court in *Greco* comports with the guidelines set down in *Jenkins.* Moreover, the court finds that United is adequately protected because there is a sizeable equity in the property. Additionally, the plan is feasible and proposed in good faith inasmuch as the debtor intends to pay the entire amount due United. Since the court has the power under the Code to confirm a plan which calls for exercising debtor's right of redemption curing all defaults within a reasonable time, United is adequately protected, the *Greco* plan is feasible and proposed in good faith, the court will not vacate the Order of Confirmation entered on April 5, 1984.