**In re Clifford Alexander DEMOFF, Linda Joan Demoff, Debtors.**

**Bankruptcy No. 87–61378.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division at Gary/Lafayette.

Aug. 31, 1988.

Angelo Sabato, Merrillville, Ind., for debtors.

I.A. Woloshansky, Merrillville, Ind., for creditor.

## MEMORANDUM OPINION AND ORDER[1]

KENT LINDQUIST, Chief Judge.

### I

*Statement of Proceedings*

Clifford and Linda Demoff (hereinafter: "Debtors") filed a chapter 13 bankruptcy on June 26, 1987. Within their plan, the Debtors attempted to cure an arrearage owed to Provident Institution for Savings (hereinafter: "Provident"). Provident is secured by a mortgage on the Debtors' principal residence. The Debtors' Plan filed October 20, 1987, provided for payments of the pre-petition arrearage over a 48 month period, and the present monthly installments. The creditor filed an objection to confirmation of the Debtors' plan on September 28, 1987 (prior to the filing of the plan), asserting that the Debtors may not "avoid" Provident's foreclosure judgment, *citing, In re Britton*, 35 B.R. 373 (N.D.Ind.1982).

At the prehearing conference held on November 3, 1987, on said objection, the parties stipulated that this contested matter involved a point of law and that no evidence need be submitted. The relevant facts are as follows: The Debtors executed a mortgage and note with the Alph Mortgage Company, Inc. for $44,500.00 on July 27, 1984 at a rate of 14%. Repayment of principal and interest was to be made in monthly installments of $557.27 from September, 1984 to August, 2014. An acceleration clause was included in the note in the

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankruptcy Rule 9014 and 7052.

event of any deficiency in payments of any installment. Provident was assigned the mortgage by Alph, and is now the holder thereof.

Provident filed a foreclosure action based on said note and mortgage in the Lake Circuit Court of Indiana on March 25, 1987. A judgment for foreclosure was entered on May 27, 1987 in the sum of $53,914.14, plus costs, and a sheriff's sale was set for September 18, 1987.

The Debtors filed a chapter 13 bankruptcy on June 26, 1987, or after the foreclosure judgment was entered, but before the sheriff's sale was held.

## II

### Discussion

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

The issue before the Court is whether the Debtor may cure a pre-petition default on a note and mortgage pursuant to 11 U.S.C. § 1322(b)(5), after a judgment of foreclosure has been entered.

The Sixth Circuit in the case of *In re Glenn*, 760 F.2d 1428 (6th Cir.1985) listed the varying results of the different courts on this issue as follows:

The courts disagree over whether and under what circumstances section 1322(b) allows a cure once a default on a mortgage has triggered acceleration of the debt, a judgment or sale. The bankruptcy court in *In re Ivory*, 32 B.R. 788 (Bankr.D.Or.1983), grouped the differing viewpoints into the following general categories:

(1) Courts that hold that a debtor may not cure a default once a mortgage debt has been accelerated: *In re Wilson*, 11 B.R. 986 (Bkrtcy.S.D.N.Y. 1981); *Matter of LaPaglia*, 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981); *In re Allen*, 17 B.R. 119, 8 B.C.D. 945 (Bkrtcy.N.D. Ohio 1981).

(2) Courts that hold that a debtor may cure a default where the mortgage debt has been accelerated provided

that no foreclosure judgment has been entered: *Percy Wilson Mortgage & Finance Corp. v. McCurdy*, 21 B.R. 535 (Bkrtcy.S.D.Ohio W.D.1982); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn. 1981); *In re Pearson*, 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981).

(3) Courts [that] hold that a debtor may cure a default where a state court judgment of foreclosure has been entered provided that no sale has taken place: *In re Acevedo*, 26 B.R. 994 (D.E.D.N.Y.1982); *In re James*, 20 B.R. 145, 9 B.C.D. 208 (Bkrtcy.E.D. Mich.1982); *In re Brantley*, 6 B.R. 178 (Bkrtcy.N.D.Fla.1980).

(4) Courts that place no express limitation on the debtor's right to cure a default after acceleration: *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982); *In re Sapp*, 11 B.R. 188 (Bankr.S.D.Ohio E.D.1981); *In re Davis*, 16 B.R. 473 (D.Kan.1981). Or after a judgment has been entered: *In re Young*, 22 B.R. 620 (Bkrtcy.N.D.Ill.E.D.1982); *In re Breuer*, 4 B.R. 499, 6 B.C.D. 136 (Bkrtcy.S.D.N.Y.1980).

(5) Courts that hold that a debtor may cure a default where a foreclosure sale has been held provided that the debtor's right of redemption under state law has not expired: *In re Johnson*, 29 B.R. 104 (Bkrtcy.S.D.Fla.1983); *In re Chambers*, 27 B.R. 687 (Bkrtcy.S.D. Fla.1983); *In re Taylor*, 21 B.R. 179 (Bkrtcy.W.D.Mo.1982); *In re Thompson*, 17 B.R. 748 (Bkrtcy.W.D.Mich. 1982).

32 B.R. at 790. To the fourth group we add the following recent opinions by the Fifth and Seventh Circuits: *Grubbs v. Houston First American Savings Association*, 730 F.2d 236 (5th Cir.1984) (en banc) (holding that a debtor may cure a default after acceleration, but expressing no limit on the right); *Matter of Clark*, 738 F.2d 869 (7th Cir.1984) (holding that a debtor may cure a default after a judgment of foreclosure that does no more than judicially confirm the acceleration under state law, but expressing no opinion whether the right to cure survives a

sale or a judgment of foreclosure in states where the effect of the judgment is different).

*Id.* at 1432. The *Glenn* court held that the event which is the cut-off date of the statutory right to cure defaults is the sale of the mortgaged property. The court noted that this point was picked in preference to a number of points in the progress of events beginning from the first date of default to the day the redemption period expires following sale. *Id.* at 1435.

The *Glenn* Court stated it picked that date for the following reasons:

(a) The language of the statute is, to us, plainly a compromise, as we have earlier mentioned. Picking a date between the two extremes, is likewise a compromise of sorts.

(b) The sale of the mortgaged property is an event that all forms of foreclosure, however denominated, seem to have in common. Whether foreclosure is by judicial proceeding or by advertisement, and regardless of when original acceleration is deemed to have occurred, the date of sale is a measurable, identifiable event of importance in the relationship of the parties. It is at the heart of realization of the security.

(c) Although the purchaser at the sale is frequently the security holder itself, the sale introduces a new element—the change of ownership and, hence, the change of expectations—into the relationship which previously existed.

(d) The foreclosure sale normally comes only after considerable notice giving the debtor opportunity to take action by seeking alternative financing or by negotiating to cure the default or by taking advantage of the benefits of Chapter 13. Therefore, setting the date of sale as the cut-off point avoids most of what some courts have described as the "unseemly race to the courthouse." Concededly no scheme can avoid that possibility altogether, but the time and notice requirements incident to most sales at least provide breathing room and should deter precipitate action that might be expected if the cut-off date were measured by the fact of notice of acceleration or the fact of filing suit.

(e) Any earlier date meets with the complaint that the rights conferred by the statute upon debtors to cure defaults have been frustrated.

(f) Any later date meets with the objection that it largely obliterates the protection Congress intended for mortgagees of private homes as distinguished from other secured lenders.

(g) Any later date also brings with it the very serious danger that bidding at the sale itself, which should be arranged so as to yield the most attractive price, will be chilled; potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized.

In so ruling we avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next. Thus, in construing this federal statute, we think it unnecessary to justify our construction by holding that the sale "extinguishes" or "satisfies" the mortgage or the lien, or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

*Id.* at 1435–36.

One decision in this Circuit as well as one in this District had been handed down regarding the issue at bar. In *Matter of Clark,* 738 F.2d 869 (7th Cir.1984), the Seventh Circuit held that a debtor may cure a default after judgment of foreclosure. Wisconsin law was applied in arriving at the result. The *Clark* court stated:

Despite the judgment of foreclosure, the Clarks still had an interest in the property at the time they filed their petition in bankruptcy, such that the property was part of the estate under 11 U.S.C. §§ 541 and 1307. Under Wisconsin law, a mortgagee has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes until the fore-

closure sale is held. A judgment of foreclosure "does little more than determine that the mortgagor is in default, the amount of principal and interest unpaid, the amounts due to plaintiff mortgagee for taxes, etc.... The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof." *Marshall & Ilsley Bank v. Greene,* 227 Wis. 155, 164, 278 N.W. 425, 429 (1938).[3] *See also, Bank of Commerce v. Waukesha County,* 89 Wis.2d 715, 723, 279 N.W.2d 237, 241 (1979) (Wisconsin follows "lien" theory of mortgages); *In re Lynch,* 12 B.R. 533, 534–35 (Bankr.W.D.Wis.1981) (mortgagor loses interest in property only after foreclosure sale).

\* \* \* \* \* \*

For these reasons, we conclude that the power to "cure" a default provided by § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage. And though the chapter 13 petitions in both *Grubbs* and *Taddeo* were filed before a judgment of foreclosure was entered, we are not persuaded that the existence of such a judgment in the present case alters the result of those cases. As we have noted, in Wisconsin a judgment of foreclosure does nothing but judicially confirm the acceleration. Though we do not reach the question whether the same result obtains in a state in which the effect of a judgment of foreclosure is different, in Wisconsin such a judgment adds nothing of consequence as far as § 1322(b) is concerned.

[3] This is in contrast to states in which the mortgage is deemed "merged" with the judgment, effectively transferring title to the mortgagee.

*Id.* at 871 and 874.

*Compare, Matter of Tynan,* 773 F.2d 177 (7th Cir.1985). There, the Court denied the right to deaccelerate under § 1322(b)(5) where the foreclosure sale had been held pursuant to Illinois law before the chapter 13 petition was filed, but before the right to redeem had run. The Court distinguished *Clark* on the facts as in *Clark* no

sale had been held. *Id.* at 178–79, n. 2. The *Tynan* court applied § 108(b) to the state redemption period. *Clark* is very well reasoned. However, careful analysis thereof as to whether it is dispositive in the case at bar is necessary due to the fact that the *Clark* court applied § 1322(b)(5) to Wisconsin Foreclosure Law and expressly stated that it expressed no opinion as to whether the right to cure survives a sale on judgment of foreclosure in states where the effect of the judgment is different. This case at bar involves Indiana Foreclosure Law.

The second case is *In re Britton,* 35 B.R. 373 (N.D.Ind.1982), wherein Judge Moody held under Indiana law a debtor could not cure a default under 11 U.S.C. § 1322(b)(3) after a foreclosure judgment. Judge Moody based his opinion on three points.

First, under Indiana law, owner or a part-owner of property may only redeem foreclosed property on full payment of the judgment amount. Second, 11 U.S.C. § 1322(b)(5) permits a debtor to cure a default on a loan secured by the debtor's principle residence only where the last payment on the loan is due after the final payment under the Debtor's chapter 13 plan. In the present case, there are no installments due after the final payment under the plan and § 1322(b)(5) is not applicable. Finally, if a debtor is permitted to utilize a chapter 13 plan to receive a mortgage foreclosed by a state court judgment, great uncertainty will result as to the effect of that judgment.

*Id.* at 375.

In *Britton,* the Court found that no payments were due under the note and mortgagee after the last payment is due under the plan because of the acceleration of the debt and the foreclosure judgment. Therefore, 11 U.S.C. § 1322(b)(5) did not apply.

That section reads:

(b) Subject to subsection (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending or any unsecured claim or

secured claims on which the last payment is due after the date on which the final payment under the plan is due;

(11 U.S.C.S. § 1322(b)(5)).

The Seventh Circuit rejected a similar argument. The Court in *In re Clark, supra,* stated:

> The Bank also argues, however, that (b)(5) does not apply to its claim against the Clarks, for as a result of the acceleration the debt had been paid in full if at all. Thus, the Bank contends, its claim was not a "claim on which the last payment [was] due after the date on which the final payment under the plan [was] due after the date on which the final plan [was] due.' 11 U.S.C. § 1322(b)(5).
>
> The panel opinion in *Grubbs [v. Houston First American Savings Association* ], 718 F.2d 694, 698 (5th Cir.1983), adopted this view. We find this argument unpersuasive. Most notes provide that the lender can accelerate the payments upon any default, and some provide for automatic acceleration. In either case, it is probable that acceleration would occur before the debtor could file a chapter 13 petition. The Bank's construction would render (b)(5)'s preservation of the ability to cure defaults all but meaningless. At the very least, the Bank's construction would encourage debtors to file bankruptcy petitions at the earliest possible moment rather than attempt to work out their financial problems short of judicial procedures. We do not think that Congress intended cure under (b)(5) to be unavailable to all but the fleet of foot, and we therefore hold that we are to look to the date of the last payment *under the note* rather than after acceleration has occurred. *Clark,* 738 F.2d at 874. (Emphasis in the original).

*Id.* at 874.

The *Clark* case also explained the difference between cure and modification.

> Acceleration of a debt is a standard consequence of a default in payments. Most notes are like the one the Clarks executed here and provide that the lender can accelerate the payments upon de-

fault. Since to cure means to restore matters to the way they were before the default, we think that the power to cure in § 1322(b) necessarily includes the power to de-accelerate the payments on the note. De-acceleration, therefore, is not a form of modification banned by (b)(2) but rather is a permissible and necessary concomitant of the power to cure defaults. *Accord, Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir.1984) *(en banc)*; *DiPierro v. Taddeo (In re Taddeo),* 685 F.2d 24 (2nd Cir.1982).

*Id.* at 872. (Footnote omitted).

Moreover, the right to cure is clearly implicit in § 1322. By comparing § 1123(a)(5)(G) to § 1322, the Second Circuit has arrived at the conclusion that chapter 13 is more liberal than chapter 11, yet chapter 11 allows a cure of a default then so must chapter 13 debtors be able to so cure. *In re Taddeo,* 685 F.2d 24, 29 (2d Cir.1982); *See also, Thompson v. Great Lakes Federal Saving and Loan Association,* 17 B.R. 748, 753 (Bankr.W.D.Mich. 1982) (provisions paralleling § 1124(2) on treatment of acceleration clauses not needed in chapter 13 as creditors vote not required in chapter 13).

Judge Moody in *Britton* placed heavy emphasis on the effect a rule allowing a debtor to cure a default after a foreclosure judgment had been entered would have on a state court judgment. Citing *In re Pearson,* the Court held that chapter 13 could not be used to void a state court judgment, and if Congress had intended such a result, it would have specifically stated.

The Seventh Circuit impliedly overruled such an argument. The effect of its holding in *Clark* is to allow a Chapter 13 debtor to de-accelerate a pre-petition state court judgment, cure a pre-petition default, and remedy the default so the consequences thereof are nullified. Other courts have reached this result. An example is found in *In re Schnupp,* 64 B.R. 763 (Bankr.N.D. Ill.1986), where the Court construed *Clark* in the light of Illinois Foreclosure Law— also a "lien theory" state, like Indiana, rather than a "title theory" state. The

*Schnupp* Court also noted that even if Illinois were a "title" theory state, deacceleration would be possible. The Court stated:

> While under federal bankruptcy law the property rights of debtors and creditors are generally determined by state law, it is also true that where state law frustrates or burdens federal policy that state law must give way. *See In re Taddeo*, 685 F.2d 24 (2d Cir.1982). *See generally*, Hart, *The Relations Between State and Federal Law*, 54 Col.L.Rev. 489 (1954).

Article VI of the United States Constitution requires state law to give way if it frustrates the implementation of a federal statutory scheme enacted by Congress pursuant to one of its enumerated powers. Chapter 13 was enacted pursuant to Article I, section 8, clause 4 of the Constitution which authorizes Congress to "establish uniform laws on the subject of Bankruptcies through the United States." A number of courts have therefore concluded that by enacting Chapter 13, Congress has preempted some state activity on matters affecting bankruptcies. *See In re Hardin*, 16 B.R. 810 (Bankr.N.D.Tex.1982); *First Investment Company v. Custer*, 18 B.R. 842 (Bankr. S.D.Ohio 1982); *In re Gwinn*, 34 B.R. 936 (Bankr.S.D.Ohio 1983); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Ivory*, 32 B.R. 788 (Bankr.D.Ore.1983); *In re Young*, 22 B.R. 620 (Bankr.N.D.Ill. 1982); *Thompson v. Great Lakes Federal Savings and Loan Association*, 17 B.R. 748 (Bankr.W.D.Mich.1982); *In re Chitwood*, 54 B.R. 396 (Bankr.W.D.Va. 1985); *In re Johnson*, 29 B.R. 104 (Bankr.S.D.Fla.1983); *In re Nelson*, 59 B.R. 417 (9th Cir., B.A.P., 1985). *But see, Matter of Skelly*, 38 B.R. 1000, 1006 (D.Del.1984) ("if Congress desired the bankruptcy courts to modify, suspend or otherwise ignore state court judgments in section 1322(b) it would have used explicit language").

The Fifth Circuit recently summed up its position on the impact of state law on applicability of § 1322(b):

> To permit for Chapter 13 purposes, the variations of the laws of different states to govern the effect of an acceleration and its curability would be to defeat one of Congress' important purposes in exercising its preemptive bankruptcy powers under the federal Constitution, to provide by Chapter 13 a uniform national remedy by which to adjust debts of individuals with regular incomes as an alternative to their being forced to undergo liquidating bankruptcy. Along with [the Second Circuit Court of Appeals] "we do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be the primary beneficiaries of the new Code—to the harsher mercies of state law."

*Grubbs v. Houston First American Savings Association*, 730 F.2d 236, 241–42 n. 9 (5th Cir.1984).

*Id.* at 768–69.

Judge Moody's opinion is also based on Indiana law, that after a foreclosure judgment, and prior to an actual sale of property, an owner or part owner of real estate may redeem the property only by paying the judgment amount, interest and cost due. I.C. § 32–8–16–3. There is no provision for redemption after judgment by paying the arrearage only under Indiana law. Therefore, Judge Moody reasoned, a Chapter 13 plan could not reinstate the original terms by merely paying the arrearage in the plan. The entire judgment amount, plus interest and costs had to be paid to be redeemed. Unless the plan called for such an amount to be paid, it was inconsistent with Indiana law, and the plan was improperly voiding a state court judgment where no express authority from Congress existed.

Even if the argument is rejected which advances the superiority of the Bankruptcy Code overall state laws relating to the deceleration of a foreclosure judgment regardless of how state law characterizes the remaining rights of the parties after foreclosure, the conclusion reached in *Britton*

cannot be dispositive of the issue in light of *Clark.*

A comparison of the Wisconsin law that was analyzed in *Clark* reveals that Wisconsin Foreclosure Laws are very similar to the Indiana Foreclosure Law. First, the Indiana statute:

Sec. 3. *At any time prior to the sale, any owner or part owner of the real estate may redeem the same from the judgment by payment to the clerk, prior to the issuance to the sheriff of the judgment and decree or to the sheriff thereafter, of the amount of the judgment, interest and costs* for the payment or satisfaction of which the sale was ordered, in which event no process for the sale of the real estate under such judgment shall be issued or executed but the Officer so receiving payment shall satisfy such judgment and the ordered sale shall be vacated: Provided, that if the real estate be so redeemed by a part owner he shall have a lien on the several shares of the other owners for their respective shares of the redemption money with interest at the rate of eight per cent per annum thereon and his costs of redemption, which lien shall be of the same force and effect as the judgment lien so redeemed, and enforceable by appropriate legal proceedings.

I.C. § 32–8–16–3 (1985). (Emphasis added).

Second, the Wisconsin redemption statute:

"The mortgagor, his heirs, personal representatives or assignees *may redeem the mortgaged premises at any time before the sale by paying to the clerk of court in which the judgment was rendered,* or to the plaintiff, or any assignee thereof, *the amount of such judgment, interest thereon with costs, and any costs subsequent to such judgment,* and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of the payment, at the same rate. On payment to such clerk or on filing the receipt of the plaintiff or his assignees for such payment in the office of said clerk he shall thereupon dis-

charge such judgment, and a certificate of such discharge duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid." ·

(W.S.A. Section 846.13). (Emphasis added).

Thus, both redemption statutes permit the mortgagee to redeem upon the payment of the judgment amount, interest, and costs accrued at any time prior to the sale. There is no provision under Wisconsin law or Indiana law for the redemption of real property by a debtor by paying the arrearage only.

There are further similarities between Indiana and Wisconsin foreclosure laws. Both states recognize the "lien theory" of mortgages. The judgment only determines the default and the amounts due to the Plaintiff, *Clark,* 738 F.2d at 871. The Seventh Circuit noted that under Wisconsin law, a mortgagee only has a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes until the foreclosure sale is held and that the judgment does not destroy the lien but rather judicially determines the amount thereof. Thus Wisconsin follows the "lien theory" of mortgages. *Clark,* 738 F.2d at 871. The Indiana Supreme Court has noted:

Indiana is unequivocally committed to the lien theory and the mortgagee has no title to the land mortgaged. The right to possession, use and enjoyment of the mortgaged property, as well as title, remains in the mortgagor, unless otherwise specifically provided, and the mortgage is a mere security for the debt.

*Egbert v. Egbert,* 235 Ind. 405, 132 N.E.2d 910, 918 (1956) *citing, Oldham v. Noble,* 117 Ind.App. 68, 75, 66 N.E.2d 614, 615, 617 (1946). ·

In Indiana, it is equally well established that legal title does not pass to the mortgagee until the foreclosure sale. In *Egbert,* the Indiana Supreme Court states:

The rule, now well established, however, is that a mortgage creates no estate in the mortgagee, but confers on him only a lien upon the estate of the mortgagor, which estate, by force of the

mortgage, can be transferred to the mortgagee only by a foreclosure and sale according to law.

*Egbert*, 235 Ind. 405, 132 N.E.2d at 918, *citing, Heavlon v. Farmers Bank of Frankfort*, 81 Ind. 249, 253 (1881).

Additionally, the Seventh Circuit in *Clark* noted that in Wisconsin:

> [A] judgment of foreclosure "does little more than determine that the mortgagor is in default, the amount of the principal and the interest unpaid, the amounts due to plaintiff mortgagee for taxes, etc. . . . The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof."

*Matter of Clark*, 738 F.2d at 871. (Citations omitted).

A foreclosure judgment has a similar effect in Indiana. "Ordinarily the judgment determines the existence of a mortgage lien, the extent thereof, and the amount due, and directs the property to be sold." 20 Indiana Law Encyclopedia, *Mortgages,* § 323, p. 207, *citing, Phillips v. Ricard's,* 3 Ind. 401 (1852).

The *Clark* decision distinguishes Wisconsin law where the mortgage is not merged with the judgment, from other states where the merger of mortgage and judgment would occur and effectively transfer title to the mortgagee. *Clark*, 738 F.2d at 871, n. 3.

Indiana does not recognize the doctrine of merger of mortgage and judgment. The Indiana Supreme Court held in 1895, that "[A] judgment upon the mortgage indebtedness neither merges nor [sic] impairs the mortgage lien. *Pence v. Armstrong*, 95 Ind. 191, and cases cited on 207 of the opinion". *Kohli v. Hall*, 141 Ind. 411, 40 N.E. 1060 (1895).

Lastly, in both Indiana and Wisconsin, the mortgagor's right of redemption is cut off by sale. For the Wisconsin law, *See Clark*, 738 F.2d at 871, *citing, In re Lynch*, 12 B.R. 533, 534–35 (Bankr.W.D. Wis.1981), and for applicable Indiana law, *see Vanjani v. Federal Land Bank of Louisville*, 451 N.E.2d 667, 672, n. 1 (Ind. App. 1st Dist.1983).

Therefore, Indiana and Wisconsin foreclosure laws are identical in all relevant aspects. The court is mindful that the *Clark* decision is carefully limited to interpreting 11 U.S.C. § 1322(b)(5) in light of Wisconsin's foreclosure law. However, it is logical to assume that where no meaningful distinctions can be found between the foreclosure laws of Indiana and Wisconsin, the Seventh Circuit would rule consistently. The court is left with no other conclusion but to hold that the Debtors in this case may cure the default on the mortgage loan. Any other ruling would be inconsistent with the Seventh Circuit's opinion in *Clark*. The court further holds that in Indiana, a Debtor may cure a default on a residential mortgage under a chapter 13 bankruptcy up to the time of sheriff's sale. There is no event which occurs between the time of foreclosure judgment and the actual sale which so changes the rights of the mortgagee and mortgagor that the mortgagee upon filing a chapter 13 would be legally precluded by Indiana law from invoking the benefits of § 1322(b)(5). The court also wishes to caution that although it agrees with many of the policy statements made by the *Glenn* court in holding as did the *Clark* court that the mortgage can be accelerated post-judgment, this decision is based on Indiana foreclosure law in light of the Seventh Circuit's emphasis on interpretation of the relevant state foreclosure law. The decision is not a "compromise" as was the Sixth Circuit's choice of the date of sheriff's sale in the *Glenn* case. *Glenn*, 760 F.2d at 1435.

IT IS THEREFORE

ORDERED, ADJUDGED AND DECREED, that the objection to confirmation of the Debtor's plan filed by Provident Institution for Savings is hereby DENIED.

The Clerk shall enter a separate order pursuant to Bankr.R. 9021.